Electronically FILED by Superior Court of California, County of Los Angeles on 10/27/2020 05:04 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel,Deputy Clerk

1   Tiffany W. Tai, State Bar No. 193271
    RITT, TAI, THVEDT & HODGES, LLP
2   65 North Raymond Avenue, Suite 320
    Pasadena, California 91103
3   Tel:    (626) 685-2550
    Fax:    (626) 685-2562
4   E-mail: tai@rtthlaw.com

5   Attorneys for GERALD WHITT, ALEXANDER
       WHITT, MATTHEW WHITT, CHRISTOPHER
6      WHITT, DEBORAH MILAM and DAVID KNECHT

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9          **COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

10

11  GERALD WHITT, ALEXANDER              Case No.  20STCV41207
    WHITT, MATTHEW WHITT,
12  CHRISTOPHER WHITT, DEBORAH           **COMPLAINT FOR DAMAGES**
    MILAM and DAVID KNECHT,              **AND EQUITABLE RELIEF FOR:**
13  individually in their personal capacities,
    and derivatively on behalf of CLOUD B,   1.  **FRAUDULENT**
14  INC.,                                        **CONCEALMENT;**
                                             2.  **BREACH OF FIDUCIARY DUTY**
15               Plaintiffs,                     **[Derivatively on Behalf of CLOUD**
                                                 **B Against Insider Defendants];**
16        vs.                                3.  **BREACH OF FIDUCIARY DUTY**
                                                 **[Derivatively on Behalf of**
17  EDISON NATION, INC., a publicly             **CLOUD B Against SUH and**
    traded Nevada corporation; CBAVI,           **JOHNSON];**
18  LLC, a Nevada limited liability company;  4.  **BREACH OF CONTRACT;**
    SRM IDEA LAB, INC., a Hong Kong       5.  **BREACH OF CONFIDENCE;**
19  corporation; CHRISTOPHER B.           6.  **INTENTIONAL**
    FERGUSON, an individual; LINDA            **MISREPRESENTATION;**
20  SUH, an individual; JEFF JOHNSON, an  7.  **NEGLIGENT**
    individual; RICHARD BRENNER, an          **MISREPRESENTATION;**
21  individual; PHILLIP MCFILLIN, an      8.  **UNFAIR BUSINESS**
    individual; KEVIN FERGUSON, an            **PRACTICES;**
22  individual; BRETT VROMAN, an          9.  **CIVIL CONSPIRACY;**
    individual; and DOES 1-100, inclusiveTi, 10. **BREACH OF FIDUCIARY DUTY**
23                                               **[By Plaintiffs in Their Personal**
                 Defendants,                     **Capacities Against EDISON**
24                                               **NATION]; and**
       -and-                                 11. **BREACH OF FIDUCIARY DUTY**
25                                               **[Derivatively on Behalf of**
    CLOUD B, INC., a California corporation,     **CLOUD B Against C.**
26                                               **FERGUSON, MCFILLIN,**
                                                 **K. FERGUSON and VROMAN]**
27               Nominal Defendant.
                                             **DEMAND FOR JURY TRIAL**
28

                                    1
                                COMPLAINT

Plaintiffs GERALD WHITT, ALEXANDER WHITT, MATTHEW WHITT, CHRISTOPHER WHITT, DEBORAH MILAM and DAVID KNECHT (hereinafter "Plaintiffs") allege as follows:

## PARTIES

1.      CLOUD B, INC. (hereinafter "CLOUD B"), the nominal defendant herein, is a California corporation duly authorized to do business in the State of California, County of Los Angeles. Plaintiffs are informed and believe, and upon such information and belief allege, that until recently, CLOUD B's principal place of business was in Gardena, California.

2.      Plaintiff GERALD WHITT (hereinafter "G. WHITT") is, and at all times relevant herein was, an individual residing in the State of California, County of Los Angeles. At all times relevant herein, G. WHITT has continuously owned 22.64% of the shares in CLOUD B, and is a board member of CLOUD B.

3.      Plaintiff ALEXANDER WHITT (hereinafter "A. WHITT") is, and at all times relevant herein was, an individual residing in the State of California, County of Los Angeles. At all times relevant herein, A. WHITT has continuously owned 0.96% of the shares in CLOUD B, and is a board member of CLOUD B.

4.      Plaintiff MATTHEW WHITT (hereinafter "M. WHITT") is, and at all times relevant herein was, an individual residing in the State of Texas, County of Travis. At all times relevant herein, M. WHITT has continuously owned 0.96% of the shares in CLOUD B.

5.      Plaintiff CHRISTOPHER WHITT (hereinafter "C. WHITT") is, and at all times relevant herein was, an individual residing in the State of Texas, County of Travis. At all times relevant herein, C. WHITT has continuously owned 0.96% of the shares in CLOUD B.

COMPLAINT

6.      Plaintiff DEBORAH MILAM (hereinafter "D. MILAM") is, and at all times relevant herein was, an individual residing in the State of California, County of Los Angeles. At all times relevant herein, D. MILAM has continuously owned a beneficial interest in 1.36% of the shares in CLOUD B.

7.      Plaintiff DAVID KNECHT (hereinafter "KNECHT") is, and at all times relevant herein was, an individual residing in the State of California, County of Orange. At all times relevant herein, KNECHT has continuously owned 0.96% of the shares in CLOUD B.

8.      Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant EDISON NATION, INC. (hereinafter "EDISON NATION") is a publicly traded Nevada corporation with its principal place of business in Bethlehem, Pennsylvania. At various times during the relevant period, EDISON NATION was known as Xpand Products Lab.  Plaintiffs are further informed and believe, and on that basis allege, that EDISON NATION is currently doing business in California.

9.      Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant CBAV1, LLC (hereinafter "CBAV1") is a Nevada limited liability company with its principal place of business in Clark County, Nevada. Plaintiffs are further informed and believe, and on that basis allege, that CBAV1 is currently doing business in California.

10.      Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant SRM IDEA LAB, INC. (hereinafter "SRM") is a Hong Kong corporation which became a wholly owned subsidiary of EDISON NATION on or about September 30, 2017. Plaintiffs are further informed and believe, and on that basis allege, that SRM is currently doing business in California.

11.      Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant CHRISTOPHER B. FERGUSON (hereinafter "C. FERGUSON") is, and at all times relevant herein was, an individual residing in the State of Pennsylvania. Plaintiffs are further informed and believe, and upon such further

information and belief allege, that C. FERGUSON is the CEO of EDISON NATION, CBAVI and SRM. (C. FERGUSON, EDISON NATION, CBAV1 and SRM are also referred to collectively as "Takeover Defendants" herein). Plaintiffs are further informed and believe, and upon such further information and belief allege, that C. FERGUSON has been a director of CLOUD B since being elected on or about November 11, 2018 until the present.

12.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant LINDA SUH (hereinafter "SUH") is, and at all times relevant herein was, an individual residing in the State of California, County of Los Angeles. Plaintiffs are further informed and believe, and upon such further information and belief allege, that at all times relevant herein, SUH was the CEO and board co-chair of CLOUD B, and that prior to October 30, 2018, SUH was the owner of 18.02% of the shares in CLOUD B.

13.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant JEFF JOHNSON (hereinafter "JOHNSON") is, and at all times relevant herein was, an individual residing in the State of California, County of Los Angeles. Plaintiffs are further informed and believe, and upon such further information and belief allege, that at all times relevant herein JOHNSON was the CTO, Vice President and a board member of CLOUD B, and that prior to October 30, 2018, JOHNSON was the owner of 8.54% of the shares in CLOUD B.

14.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant RICHARD BRENNER (hereinafter "BRENNER") is, and at all times relevant herein was, an individual residing in the State of California, County of San Bernardino. Plaintiffs are further informed and believe, and upon such further information and belief allege, that at all times relevant herein, BRENNER was the President of CLOUD B. (SUH, JOHNSON and BRENNER are also referred to collectively as "Insider Defendants" herein.)

15.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant PHILLIP MCFILLIN (hereinafter "MCFILLIN") is, and at all times relevant herein was, an individual residing in the state of Pennsylvania. Plaintiffs are further informed and believe, and upon such further information and belief allege, that MCFILLIN has been a director of CLOUD B since being elected on or about November 11, 2018 until the present.

16.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant KEVIN FERGUSON (hereinafter "K. FERGUSON") is, and at all times relevant herein was, an individual residing in the state of Pennsylvania. Plaintiffs are further informed and believe, and upon such further information and belief allege, that K. FERGUSON has been a director of CLOUD B since being elected on or about November 11, 2018 until the present.

17.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant BRETT VROMAN (hereinafter "VROMAN") is, and at all times relevant herein was, an individual residing in the state of Pennsylvania and the CFO of EDISON NATION. Plaintiffs are further informed and believe, and upon such further information and belief allege, that VROMAN has been a director of CLOUD B since being elected on or about November 11, 2018 until the present.

18.    The true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue those defendants by such fictitious names. Plaintiffs will amend this Complaint to insert the true names and capacities of such DOE defendants when the same have been ascertained.

19.    Plaintiffs are informed and believe, and upon such information and belief allege, that each defendant designated herein as a DOE is responsible in some manner for the occurrences and events herein alleged, and that Plaintiffs' damages were proximately caused by their conduct.

20.     Plaintiffs are informed and believe, and upon such information and belief allege, that unless otherwise specifically mentioned, each defendant was an agent, employee, or co-conspirator of each of the remaining defendants, and that in doing the things complained of herein was acting within the course and scope of such agency, employment or conspiracy.

## GENERAL ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

21.     CLOUD B was a manufacturer and distributor of plush toys and accessories which double as sleep aides for children and babies. Founded in 2002, CLOUD B had been very successful in its design of award-winning products, and had obtained many valuable patents, trademarks, copyrights and other intellectual properties along the way.

22.     Notwithstanding its success, poor management and excess spending led to severe cash flow issues. From time to time, shareholders – including G. WHITT – had to make personal loans to CLOUD B in order to keep the company afloat. As early as December of 2015, for example, G. WHITT personally provided CLOUD B with a $400,000 line of credit to be used in the purchase of finished goods from CLOUD B's suppliers.

23.     At some time prior to 2015, the CLOUD B board of directors was concerned about improper dissemination of confidential financial and other confidential information. To address this concern, the board passed a resolution that prohibited the distribution of any financial information about CLOUD B to any outside party without prior approval from CLOUD B's board (hereinafter the "ANTI-DISCLOSURE RESOLUTION").  Insider Defendants SUH and JOHNSON, who were on CLOUD B's board, voted in favor of the resolution.

24.     Unbeknownst to Plaintiffs, even while CLOUD B was seeking personal loans from G. WHITT, the Insider Defendants began to hatch a plan to sell out the company for their own financial advantage. In particular, Plaintiffs are informed and believe, and upon such information and belief allege, that in June 2017, SUH and BRENNER – presumably with JOHNSON's knowledge and approval – traveled to Michigan and Canada to meet with a potential investor without advising the other CLOUD B board members. Plaintiffs are further informed and believe, and upon such further information and belief allege, that in direct violation of CLOUD B's ANTI-DISCLOSURE RESOLUTION, SUH and BRENNER disclosed confidential and proprietary information to the potential investor during their covert meetings in the summer of 2017.

25.     Upon their return to California, SUH and BRENNER informed G. WHITT, A. WHITT and Michael Milam (hereinafter "M. MILAM"), CLOUD B's accountant and a consultant to its board, of their meetings with the potential investor after the fact, and advised them that the investor had made an offer to acquire CLOUD B's operations in exchange for keeping the current management team (i.e., job security for SUH, BRENNER and JOHNSON). On information and belief, the prospect of keeping their jobs was apparently enough to satisfy them, and the Insider Defendants indicated their willingness to accept the offer.

26.     However, G. WHITT and A. WHITT – shareholders who would receive nothing in the proposed deal – were not willing to approve such a one-sided transaction. At a meeting in July 2017, Plaintiffs G. WHITT, A. WHITT and M. MILAM further reminded SUH, BRENNER and JOHNSON that the disclosure of confidential and proprietary information to the investor was a blatant violation of CLOUD B's ANTI-DISCLOSURE RESOLUTION. In response, BRENNER requested a release and indemnification for his transgression. No such release or indemnification was given to him.

COMPLAINT

27.     Not to be deterred, the Insider Defendants continued to pursue their personal financial advantage without Plaintiffs' knowledge. To that end, the Insider Defendants had also begun communicating with the Takeover Defendants by the summer of 2017. On or about September 6, 2017, in violation of CLOUD B's ANTI-DISCLOSURE RESOLUTION, the Insider Defendants – on behalf of CLOUD B – entered into a nondisclosure agreement with SRM and proceeded to disclose confidential and proprietary information to the Takeover Defendants. Insider Defendants made no attempt to get board approval for their dissemination of confidential information. Both the existence of the nondisclosure agreement and the subsequent disclosure of confidential information were intentionally concealed from Plaintiffs.

28.     Plaintiffs are informed and believe, and thereon allege, that at some time between September 6, 2017 and November 30, 2017, the Insider Defendants informed the Takeover Defendants that East West Bank held a first priority security interest in all of CLOUD B's assets to secure a $2.3 million loan (hereinafter the "EWB LOAN"). Prior to September 2017, BRENNER was told repeatedly by G. WHITT that East West Bank would not foreclose on the note. Furthermore, despite being told by M. MILAM never to allow a potential purchaser to deal directly with East West Bank, the Insider Defendants introduced the Takeover Defendants to East West Bank without telling Plaintiffs, or bringing the matter to the attention of CLOUD B's board.

29.     Plaintiffs are informed and believe, and thereon allege, that on or about November 30, 2017, SRM signed a nondisclosure agreement with East West Bank to acquire additional confidential information about CLOUD B's loan. East West Bank insisted upon written approval by CLOUD B before East West Bank would proceed with signing the nondisclosure agreement. Again, without telling any of the Plaintiffs, SUH purported to approve the nondisclosure agreement on behalf of CLOUD B, and allowed the Takeover Defendants to communicate directly with East West Bank about CLOUD B's loan. When SUH signed the approval, she knew that she lacked authority to do so pursuant to the resolutions of the CLOUD B board.

COMPLAINT

30.     In late December 2017, C. FERGUSON, who was the CEO of SRM, was finally introduced to G. WHITT, A. WHITT and M. MILAM in a conference call that also included the Insider Defendants. At this time, the Plaintiffs had no knowledge that any financial information had been disclosed. After the call, M. MILAM again cautioned the Insider Defendants not to disclose confidential information to C. FERGUSON until a firm agreement had been signed. In response to a direct question by M. MILAM, BRENNER finally disclosed the existence of the nondisclosure agreement between CLOUD B and SRM, but continued to conceal the fact that SRM had also signed a nondisclosure agreement with East West Bank.

31.     On or about January 8, 2018, CLOUD B's board of directors met to discuss the possibility of a deal with C. FERGUSON and/or his affiliated entities. At no point during the meeting did the Insider Defendants inform the board that they had already facilitated the Takeover Defendants dealing directly with East West Bank and had signed the East West Bank nondisclosure agreement without board approval, despite the fact that the Plaintiffs mentioned the need to keep C. FERGUSON from dealing with the bank directly numerous times during the board meeting.

32.     On or about January 22, 2018, G. WHITT sent an email to the Insider Defendants discussing the East West Bank note. In particular, G. WHITT opined that East West Bank would probably be willing to sell the note at a discount and that it was important to keep the note in friendly hands. To that end, G. WHITT offered to find such a lender if necessary. The Insider Defendants did not respond to the email, and instead continued to conceal their knowledge that the Takeover Defendants were already talking directly to East West Bank about the note.

33.     On March 5, 2018, C. FERGUSON submitted a term sheet for the purchase of CLOUD B's assets by EDISON NATION. The consideration to CLOUD B under the term sheet was $2.7M in shares of common stock and an earn out provision based on future sales, which was to go to CLOUD B. The term sheet provided no consideration for CLOUD B's shareholders.

34.     Rather than schedule a board meeting to discuss the term sheet, SUH noticed a shareholder meeting for March 19, 2018, and falsely represented that the shareholders would receive consideration under EDISON NATION's proposal. G. WHITT objected to the notice on the ground that it was misleading and argued that the board should review the term sheet and negotiate an agreement to present to the shareholders. Rather than acceding to G. WHITT's request for a board meeting, the Insider Defendants embarked on a campaign to malign G. WHITT, A. WHITT and M. MILAM from the other shareholders, by claiming that G. WHITT, A. WHITT and M. MILAM were conspiring to actively prevent a sale to C. FERGUSON or his related entities.

35.     At the shareholder meeting on March 19, 2018, a negotiating committee comprised of BRENNER, SUH, JOHNSON, A. WHITT and another shareholder named John Royan was formed to negotiate with the Takeover Defendants. To the best of Plaintiffs' knowledge and belief, the negotiating committee was inactive until C. FERGUSON visited in late April 2018. During C. FERGUSON's visit, he was introduced to the negotiating committee, and he told them a formal offer would be forthcoming within a few weeks.

36.     At the request of A. WHITT, SUH sent an email to C. FERGUSON on April 23, 2018, advising him to direct all correspondence to the entire committee in writing. Despite the email, and unbeknownst to Plaintiffs, C. FERGUSON had been negotiating, and continued to negotiate, with the Insider Defendants. Plaintiffs were not aware of the covert negotiations between C. FERGUSON and the Insider Defendants, nor were they aware of the ongoing negotiations between the Takeover Defendants and East West Bank. In fact, A. WHITT continued to urge the Insider Defendants to find a friendly lender to take over the East West Bank note. BRENNER refused to pursue the matter, telling A. WHITT it was "too risky" to find a new lender.

37.     In May 2018, the Insider Defendants traveled to North Carolina to meet with the Takeover Defendants. A. WHITT was not invited. Instead, he was told by

JOHNSON that the trip was for the purpose of having SUH, JOHNSON, and BRENNER meet the EDISON NATION team. Around this time, the Insider Defendants began having CLOUD B employees work on EDISON NATION projects, all without compensation to CLOUD B or approval by the CLOUD B board.

38. Meanwhile, unbeknownst to Plaintiffs, the Takeover Defendants continued to negotiate directly with East West Bank to acquire CLOUD B's promissory note at a discount. On May 14, 2018, the Takeover Defendants formed CBAV1 for the express purpose – as stated in filings with the SEC – of purchasing the East West Bank note. On the same day it was formed, CBAV1 signed yet another non-disclosure agreement with East West Bank without CLOUD B's board approval and in violation of the ANTI-DISCLOSURE RESOLUTION. Again, SUH signed an agreement indicating CLOUD B's purported approval. Again, she lacked authority to do so.  Again, the Insider Defendants withheld the existence of the new nondisclosure agreement from the Plaintiffs.

39. Plaintiffs are informed and believe, and upon such information and belief allege, that on or about June 4, 2018, CBAV1 paid $500,000 for the $2.3M secured EWB LOAN.  The Insider Defendants withheld this information from the Plaintiffs for several weeks.

40. Plaintiffs are informed and believe, and upon such information and belief allege, that on June 6, 2018, two days after the Takeover Defendants acquired CLOUD B's note to East West Bank, the Takeover Defendants sent BRENNER an "Option" for EDISON NATION to acquire all of CLOUD B's assets. The only consideration for the option was CBAV1's forbearance of the East West Bank note. Rather than inform CLOUD B's board of the Option, BRENNER forwarded the Option to attorney Kathryn Tyler ("Tyler") and – presumably with knowledge and approval of SUH and JOHNSON – directed Tyler to start negotiating the terms of the Option with counsel for EDISON NATION. Tyler purported to negotiate the terms of the Option but in fact, she did not

COMPLAINT

negotiate any significant changes in favor of CLOUD B. Tyler's negotiation of the terms of the option was not disclosed to the Plaintiffs.

41.     On or about June 20, 2018, BRENNER told A. WHITT that the East West Bank note had been sold to the Takeover Defendants. BRENNER claimed he had no notice of the sale before it occurred.

42.     At A. WHITT's insistence, SUH sent an email on June 29, 2018, to advise CLOUD B's board of the sale of the note. In the email, however, SUH claimed that the purchase was made in order to "protect" CLOUD B and implied that it was done with the consent of the negotiating committee. Upon receipt and review of the email, A. WHITT insisted that SUH send a follow-up email to make it clear that the negotiating committee – at least the committee members other than the Insider Defendants – did not have advance notice of the sale.

43.     On or about July 3, 2018, SUH forwarded the "negotiated" Option to the full negotiating committee, including A. WHITT. Upon seeing that the proposed terms were materially worse for CLOUD B than even the terms of the March 5, 2018 term sheet, A. WHITT immediately asked SUH to forward the Option to the full board.

44.     The following week, on or about July 12, 2018, EDISON NATION's representative Jenene Hoyt traveled to California to visit CLOUD B. Hoyt pressed to have the Option signed immediately. Notwithstanding A. WHITT's insistence that CLOUD B's board needed time to review the proposal, BRENNER stated that board review was not required and SUH further stated that she could avoid board approval by simply having the shareholders vote on the Option in a meeting that could be noticed "within days." Around this time, A. WHITT learned for the first time that the Option had been sent to BRENNER more than a month prior, and that Tyler had been working on the Option with EDISON NATION's counsel. A. WHITT insisted that the negotiating committee hire an outside attorney to review the Option on behalf of CLOUD B.

COMPLAINT

45.     The negotiating committee retained attorney Terrance Smith ("Smith") who, after reviewing the Option, advised the committee that the Option was almost entirely one-sided in favor of EDISON NATION, and that CLOUD B should not agree to the Option in its current form. On one phone call with Smith, BRENNER specifically asked if the Option could be amended in two specific ways: 1) remove the requirement of CLOUD B's board to approve of the Option, and 2) insert a provision to grant the Insider Defendants a release by CLOUD B and the Plaintiffs from any liability. Smith said that such a release would be extremely unusual and that California law required board approval.

46.     Meanwhile, in July 2018, BRENNER and SUH traveled with Hoyt to China to meet with CLOUD B's suppliers. BRENNER and SUH concealed the true purpose of their trip from Plaintiffs. In fact, the trip was in direct defiance of M. MILAM's advice not to introduce any prospective buyer to CLOUD B's suppliers without a signed contract.

47.     On July 16, 2018, G. WHITT sent an email to the Insider Defendants advising them of his intent to investigate the purchase of the East West Bank note by CBAV1 in apparent violation of the September 6, 2017 nondisclosure agreement signed by C. FERGUSON. G. WHITT asked the Insider Defendants for copies of their correspondence on the matter, but they refused to provide anything. Instead, they alerted C. FERGUSON of the investigation.

48.     On July 18, 2018, G. WHITT and A. WHITT called for a board meeting, which was scheduled for August 1, 2018. At the board meeting, accountant Rex Ours ("Ours") was added to the negotiating committee, and motions were passed requiring BRENNER, SUH and Tyler to assist in G. WHITT's investigation. Notably, in response to G. WHITT's question whether she had received any additional consideration or promises from EDISON NATION, SUH admitted that she had been told by C. FERGUSON the personal loans she and her family made to CLOUD B "would be taken care of."

49.     Following the August 1, 2018 board meeting, BRENNER resigned from the negotiating committee. Thereafter, on August 6, 2018, C. FERGUSON and Hoyt met with G. WHITT and the reconstituted negotiating committee. At the meeting, C. FERGUSON agreed that the EDISON NATION stock could go to the shareholders, and that he would negotiate with CLOUD B's creditors to settle their claims at a discount in exchange for cash he would be providing. When asked why he purchased the East West Bank note without telling CLOUD B, C. FERGUSON responded, "We had to protect ourselves."

50.     Over the next two weeks, A. WHITT and Ours attempted to negotiate a better price for CLOUD B's assets, though none of the Insider Defendants expressed any interest in further negotiations. C. FERGUSON reinserted the earn out provision and increased the amount of EDISON NATION stock to $3.0M, and explained his price by saying that he placed a $10.0M enterprise value on CLOUD B, and that he estimated the creditors' claims amounted to $7.0M, leaving $3.0M for CLOUD B's shareholders. Notably, the $7.0M estimate for creditor claims would have included paying CBAV1 the full amount of the EWB LOAN which CBAV1 acquired for a fraction of the loan.

51.     After the negotiating committee made a counteroffer, C. FERGUSON began dealing exclusively with Ours by telephone. C. FERGUSON repeatedly expressed his displeasure at any attempt to negotiate the deal. During one phone call on August 26, 2018, C. FERGUSON told Ours that he "owned everything anyway" in light of CBAV1's possession of the East West Bank note. The following day, on August 27, 2018, CBAV1 made a written demand for payment of the entire $2.3M within seven days. Four days later, on August 31, 2018, 68.56% of CLOUD B's shareholders signed a "statement of consent" agreement to sell their shares to EDISON NATION.

52.     The Takeover Defendants eventually acquired 72.16% of CLOUD B stock in exchange for $3.0M of publicly traded stock in EDISON NATION on October 30, 2018. The selling shareholders did not include Plaintiffs.

53.     On November 1, 2018, A. WHITT was terminated as a consultant for CLOUD B. He was thereafter denied access to his CLOUD B email, though he remained a director of the company.

54.     On November 11, 2018, the Takeover Defendants appointed themselves to four of the six seats on the CLOUD B board, comprised of C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN. G. WHITT and A. WHITT remained on the board, but the new board never held a board meeting.

55.     Without notice to five of the Plaintiffs, CBAV1 foreclosed on all of CLOUD B's assets on February 11, 2019. As a result, Plaintiffs' stocks in CLOUD B became worthless, and CLOUD B's creditors were left without recourse. EDISON NATION's stock in CLOUD B also became valueless less than four months after EDISON NATION paid more than $3.0M for it.  However, the Takeover Defendants received all of CLOUD B's assets, while the Insider Defendants received stock in EDISON NATION, jobs for themselves, and agreement from Takeover Defendants that their own debts from CLOUD B would be repaid.

56.     On August 18, 2019, G. WHITT wrote to JOHNSON asking to review the corporate minutes of CLOUD B in his capacity as a director of the company. JOHNSON replied that he worked for EDISON NATION and that C. FERGUSON had instructed him to withhold CLOUD B information from G. WHITT.

57.     From August 18, 2019 to the present, G. WHITT and A. WHITT have repeatedly attempted to get access to CLOUD B's corporate records from C. FERGUSON and his counsel, but they have been refused access as required by Article III, Section 14 of the CLOUD B by-laws and Section 1603 of the California Corporations Code.

58.     On or about November 5, 2019, CLOUD B held a special meeting of the shareholders of CLOUD B telephonically for the purpose of voting to dissolve the company. The meeting was called by EDISON NATION and held over the objections of Plaintiffs. Nevertheless, Plaintiffs attended the meeting, either personally or through a

proxy, and expressed their desire that they did not want to dissolve the company.

C. FERGUSON participated in the meeting for EDISON NATION and attempted to unilaterally vote to dissolve on its motion. However, there was no second to the motion so it could not go forward under CLOUD B's by-laws. C. FERGUSON expressed his frustration that he could not get what he wanted and advised that they would proceed to take other steps to dissolve the company.

59.     Subsequently, on November 15, 2019, EDISON NATION issued a press release titled "Edison Nation, Inc. Reports Financial Results for the Third Quarter and Nine Months Ended September 30, 2019," in which EDISON NATION stated, among other things, that "[F]urther balance sheet improvement anticipated by year-end 2019 with the removal of $5.6 million of liabilities related to the previously foreclosed entity, Cloud B, Inc., which is in the process of dissolution."

60.     However, EDISON NATION did not make any efforts to dissolve the company. Instead, on February 17, 2020, EDISON NATION sold its interest in CLOUD B to Pearl 33 Holdings, LLC, in exchange for $1.00.  The terms of the purchase agreement include a Release and Indemnification Agreement.

61.     In light of the fact that EDISON NATION had paid in excess of $3 million worth of stock and other consideration for the same shares it sold for $1 less than sixteen months later, Plaintiffs are informed and believe that this sale was a sham, and was intended to manipulate the price of EDISON NATION's publicly traded shares. The sale occurred after EDISON NATION issued the press release stating their intention to dissolve CLOUD B. EDISON NATION never notified the Plaintiffs of the sale.

62.     Notwithstanding the transfer of shares, there has been no change in the board of CLOUD B.  The same four members of the board voted on by EDISON NATION, including C. FERGUSON, remain on the board.  There have not been any CLOUD B board shareholder meetings since the telephonic meeting on November 5, 2019.

COMPLAINT

63.     Plaintiffs' claims are based, in material part, on tortious conduct by C. FERGUSON and EDISON NATION by which they misappropriated the only material assets of CLOUD B for their benefit, leaving Plaintiffs' stock worthless.

64.     Plaintiffs did not try to secure action by the board before filing this action because it would have been futile to do so. Since four of the six existing CLOUD B board members include C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN, it is unrealistic to expect that the board would objectively evaluate Plaintiffs' claims. This futility is further demonstrated by EDISON NATIONS's indemnity of Pearl Holdings, LLC of the very claims asserted by Plaintiffs.

65.     Additionally, the Takeover Defendants and MCFILLIN, K. FERGUSON, and VROMAN, in their capacity as CLOUD B directors, voted to hire an independent attorney – Ajay Gupta – and a management consultant – David Foos – in order to perform an investigation.  When the decision to hire outside counsel was passed by CLOUD B's board, C. FERGUSON stated that "the investigation should include everything."  Later, however, G. WHITT and A. WHITT were explicitly informed by Gupta he was given specific instructions to not investigate CBAV1's foreclosure on CLOUD B's assets, and was to only investigate the loan G. WHITT had made to CLOUD B.

66.     Plaintiffs delivered a true copy of this Complaint to the board before filing it.


**FIRST CAUSE OF ACTION**

**Fraudulent Concealment**

**[Derivatively on Behalf of CLOUD B Against the Insider Defendants]**


67.     Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

68.     At all times relevant herein, Defendants SUH, JOHNSON and BRENNER, as officers of CLOUD B, and Defendants SUH and JOHNSON, as directors of CLOUD B, were fiduciaries who owed CLOUD B and its shareholders a duty of honesty, among others.

69.     The Insider Defendants concealed material facts concerning their covert negotiations with Takeover Defendants, including, but not limited to, the following:

(a)     On or about September 6, 2017, in violation of CLOUD B's ANTI-DISCLOSURE RESOLTION, the Insider Defendants purportedly entered into a nondisclosure agreement with SRM on behalf of CLOUD B, and then proceeded to disclose CLOUD B's confidential and proprietary information to its potential buyer;

(b)     On or around November 2017, despite being warned by M. MILAM never to allow a potential buyer to deal directly with East West Bank, Insider Defendants informed the Takeover Defendants about the $2.3M secured note held by East West Bank and introduced Takeover Defendants to East West Bank;

(c)     On or about November 30, 2017, SUH further facilitated Takeover Defendants dealing directly with East West Bank by approving in writing, on behalf of CLOUD B, the nondisclosure agreement between SRM and East West Bank;

(d)     On or about January 7, 2018, CLOUD B held a board meeting to discuss, among other matters, a strategy for negotiating with the Takeover Defendants. None of the Insider Defendants disclosed the fact that the Takeover Defendants had already entered into a nondisclosure agreement with East West Bank to the other directors. The topic of the EWB LOAN was discussed at length, as was the importance of keeping EDISON NATION away from East West Bank, and yet the Insider Defendants kept silent and maintained their secret from the rest of CLOUD B's board;

(e)     Throughout CLOUD B's negotiation with Takeover Defendants concerning the potential purchase of CLOUD B, Insider Defendants concealed the fact that Takeover Defendants were also negotiating with East West Bank to purchase the $2.3M secured note for CLOUD B's assets at a substantial discount;

(f)     Even as Plaintiff G. WHITT opined that East West Bank may be willing to sell the secured note at a discount and that it was important for CLOUD B to keep the note in "friendly" hands, Insider Defendants continued to conceal the fact that Takeover Defendants were negotiating with East West Bank to purchase the note. In fact, Defendant BRENNER rejected A. WHITT's suggestion to look for a lender, stating that such a move was "too risky"; and

(g)     Despite the fact that CLOUD B's shareholders had only given the negotiating committee authorization to deal with EDISON NATION on their behalf, the Insider Defendants decided to have an outside attorney, Kathryn Tyler, work directly with the Takeover Defendants on a draft of an Option Agreement. Tyler's involvement was kept secret from A. WHITT by the Takeover Defendants.

70.     As a result of Insider Defendants' willful concealment, Plaintiffs were misled to believe that Takeover Defendants intended to negotiate for the purchase of CLOUD B in good faith and to negotiate with CLOUD B's creditors.

71.     Insider Defendants' willful concealment further caused Plaintiffs to believe that the $2.3M secured note held by East West Bank was safe from hostile lenders. In reliance upon such belief, and at BRENNER's insistence, Plaintiffs refrained from pursuing the purchase of the $2.3M secured note by a "friendly" lender.

72.     As a result of Insider Defendants' fraudulent conduct, Takeover Defendants were able to purchase the $2.3M secured note for $500,000 and leverage a buy-out of CLOUD B's majority shares to the detriment of CLOUD B's creditors and Plaintiffs. Thereafter, Takeover Defendants foreclosed on the note and rendered CLOUD B's stock worthless. Insider Defendants' fraudulent conduct has proximately caused significant damages to CLOUD B in an amount in excess of the statutory minimum.

73.     Insider Defendants' conduct was intentional, malicious, oppressive, fraudulent, and despicable. CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish Insider Defendants for engaging in this conduct and to deter such conduct in the future.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

### [Derivatively on Behalf of CLOUD B Against Insider Defendants]

74.     Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

75.     At all times relevant herein, SUH, JOHNSON and BRENNER, as officers of CLOUD B, owed duties of loyalty and care, among others, to CLOUD B and its shareholders.

76.     SUH, JOHNSON and BRENNER breached their fiduciary duties by, among other things, engaging in covert negotiations with Takeover Defendants in an attempt to trade the company for their own personal financial advantage (i.e., jobs, the repayment of the SUH loans, and purchase of their shares). In the process, SUH, JOHNSON and BRENNER disclosed CLOUD B's proprietary and confidential information to Takeover Defendants, allowed Takeover Defendants to deal directly with East West Bank to CLOUD B's detriment, and withheld material facts concerning their covert negotiations and Takeover Defendants' purchase of the $2.3M secured note from East West Bank from Plaintiffs.

77.     As a result of Insider Defendants' breach of fiduciary duty, Takeover Defendants were able to purchase the $2.3M secured note for $500,000 and leverage a buy-out of CLOUD B's majority shares to the detriment of CLOUD B's creditors and Plaintiffs. Thereafter, Takeover Defendants foreclosed on the note and rendered CLOUD B's stocks worthless. Insider Defendants' breach of fiduciary duty has proximately caused significant damages to CLOUD B in an amount in excess of the statutory minimum.

78.     Insider Defendants' conduct was intentional, malicious, oppressive, fraudulent, and despicable. CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish Insider Defendants for engaging in this conduct and to deter such conduct in the future.

## **THIRD CAUSE OF ACTION**

### **Breach of Fiduciary Duty**

### **[Derivatively on Behalf of CLOUD B Against SUH and JOHNSON]**

79.     Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

80.     At all times relevant herein, SUH and JOHNSON, as directors of CLOUD B, owed duties of loyalty and care, among others, to CLOUD B and its shareholders.

81.     SUH and JOHNSON breached their fiduciary duties by, among other things, engaging in covert negotiations with Takeover Defendants in an attempt to trade the company for their own personal financial advantage (i.e., jobs, the repayment of the SUH loans, and the purchase of their shares).  In the process, SUH and JOHNSON disclosed CLOUD B's proprietary and confidential information to Takeover Defendants, allowed Takeover Defendants to deal directly with East West Bank to CLOUD B's detriment, and withheld material facts concerning their covert negotiations and Takeover Defendants' purchase of the $2.3M secured note from East West Bank from Plaintiffs.

82.     As a result of SUH and JOHNSON's breach of fiduciary duty, Takeover Defendants were able to purchase the $2.3M secured note for $500,000 and leverage a buy-out of CLOUD B's majority shares to the detriment of CLOUD B's creditors and Plaintiffs. Thereafter, Takeover Defendants foreclosed on the note and rendered CLOUD B's stock worthless. SUH and JOHNSON's breach of fiduciary duty has

proximately caused significant damages to CLOUD B in an amount in excess of the statutory minimum.

83.     SUH and JOHNSON's conduct were intentional, malicious, oppressive, fraudulent, and despicable. CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish them for engaging in this conduct and to deter such conduct in the future.

**FOURTH CAUSE OF ACTION**

**Breach of Contract**

**[Derivatively on Behalf of CLOUD B Against SRM]**

84.     Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

85.     On or about September 6, 2017, CLOUD B and SRM entered into a written Nondisclosure Agreement ("the NDA").

86.     Pursuant to the NDA, certain proprietary and confidential information concerning CLOUD B, including the fact that East West Bank held a $2.3M secured note to CLOUD B's assets, were disclosed to SRM on the express condition that SRM refrain from using such information to its advantage and to CLOUD B's detriment.

87.     To the best of Plaintiffs' knowledge, CLOUD B has fully performed all obligations required of it under the terms and conditions of the NDA, except those obligations the performance of which have been excused or rendered impossible as a result of conduct by SRM.

88.     SRM has breached the NDA by, among other things, using CLOUD B's proprietary and confidential information to cause Takeover Defendants to secure the $2.3M note from East West Bank at a steep discount, and in the process gaining an enormous advantage over CLOUD B in the negotiations of its purchase.

89.     As a direct and proximate result of SRM's breach of the NDA, CLOUD B has been damaged in an amount to be determined at trial, but in excess of the jurisdictional threshold of this Court.

## FIFTH CAUSE OF ACTION

### Breach of Confidence

### [Derivatively on Behalf of CLOUD B Against C. FERGUSON, CBAV1 and DOES 1 through 100]

90.     Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

91.     In the course of Takeover Defendants' negotiations to purchase CLOUD B, certain proprietary and confidential information concerning CLOUD B was conveyed to Takeover Defendants, including C. FERGUSON.

92.     The confidential nature of the information was made known to Takeover Defendants, including C. FERGUSON, before the disclosure; and prior to such disclosure, Takeover Defendants had the opportunity to reject receipt of the information on a confidential basis.

93.     Takeover Defendants, including C. FERGUSON, voluntarily accepted CLOUD B's proprietary and confidential information with the understanding and in agreement that they would keep said information confidential, and not use said information to their own advantage in the ongoing negotiations for the purchase of CLOUD B.

94.     Notwithstanding the foregoing, Takeover Defendants, including C. FERGUSON, utilized CLOUD B's confidential information to their advantage, including the formation of CBAV1 for the purpose of purchasing a $2.3M secured note from East West Bank, which facilitated Takeover Defendants' buy-out of the majority

23

COMPLAINT

shares in CLOUD B, and the foreclosure of which rendered CLOUD B's stock worthless.

95.     Defendants C. FERGUSON, CBAV1 and Does 1 through 100's breach of confidence, as detailed above, has proximately caused significant damage to CLOUD B, in an amount to be determined at trial, but in excess of the jurisdictional threshold of this Court.

96.     Defendants C. FERGUSON, CBAV1 and Does 1 through 100's breach of confidence, as detailed above, was intentional, malicious, oppressive, fraudulent, and despicable. CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish them for engaging in this conduct and to deter such conduct in the future.

## SIXTH CAUSE OF ACTION

### Intentional Misrepresentation

**[By Plaintiffs in Their Individual Capacities and Derivatively on Behalf of CLOUD B Against Takeover Defendants and Does 1 through 100]**

97.     Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

98.     In the course of Takeover Defendants' negotiations for the purchase of CLOUD B, Takeover Defendants were informed of two lawsuits – *Sound N Light Animatronics Co., Ltd. v. Cloud B, Inc.*, Case No. 2:16-cv-05271-TJH-JPR, in federal district court (the "Federal Case"), and *Yiwu Chaoqite Toy Co., Ltd. v. Cloud B, Inc.*, Case No. TC029019, in California state court (the "State Case") – pending between CLOUD B and its creditors.

99.     On several occasions, including a meeting on or about August 6, 2018, attended by A. WHITT where the issue was discussed at length, C. FERGUSON on

behalf of himself and his affiliated entities indicated that they would negotiate directly with CLOUD B's creditors.  When A. WHITT discussed CLOUD B's debt with the Insider Defendants, he was told by BRENNER that C. FERGUSON should negotiate with CLOUD B's creditors because it was 'his money that's going to be used' for the settlements.

100.    In or around August 2018, after C. FERGUSON had increased the proposed amount of EDISON NATION stock in the purchase of CLOUD B to $3.0M, C. FERGUSON further explained the amount by stating that he placed a $10.0M enterprise on CLOUD B, and estimated the claims of CLOUD B's creditors – including the litigants in the pending lawsuits against CLOUD B – to amount to $7.0M. In other words, Plaintiffs were led to believe that Takeover Defendants had reserved $7.0M for the purpose of settling the claims of CLOUD B's creditors.

101.    In reliance upon the representations of Takeover Defendants, especially C. FERGUSON, CLOUD B refrained from negotiating a settlement with the litigants in the Federal Case and the State Case.

102.    In reliance upon the representations of Takeover Defendants, Plaintiffs retained their stock in CLOUD B, believing that Takeover Defendants intended to settle claims of creditors and to maintain CLOUD B as a viable and operational company.

103.    Plaintiffs are informed and believe, and upon such information and belief allege, that the representations of Takeover Defendants were false, and that Takeover Defendants never intended to negotiate with any of CLOUD B's creditors. Indeed, on or about February 11, 2019, shortly after Takeover Defendants were successful in acquiring the majority shares in CLOUD B, CBAV1 foreclosed on all of CLOUD B's assets via the $2.3M secured note, rendering all stock in CLOUD B worthless, and leaving CLOUD B's creditors with no recourse.

104.    Plaintiffs are informed and believe, and upon such information and belief allege, that Takeover Defendants allowed CLOUD B to incur default judgments in one or both of the Federal Case and State Case. In particular, Plaintiffs are informed and

believe, and upon such information and belief allege, that on or about July 30, 2019, a judgment in the amount of $1,788,306.81 was entered against CLOUD B in the Federal Case.

105.    Takeover Defendants' intentional misrepresentation has proximately caused significant damage to Plaintiffs and to CLOUD B, in an amount to be determined at trial, but in excess of the jurisdictional threshold of this Court.

106.    Plaintiffs have been directly damaged by Takeover Defendant's intentional misrepresentations because they were the only shareholders who were negatively impacted by Defendants' conduct, and as such, Plaintiffs may assert this cause of action directly against Takeover Defendants.

107.    Takeover Defendants' intentional misrepresentation was intentional, malicious, oppressive, fraudulent, and despicable. Plaintiffs and CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish Takeover Defendants for engaging in this conduct and to deter such conduct in the future.

## SEVENTH CASUE OF ACTION

### Negligent Misrepresentation

### [By Plaintiffs in Their Individual Capacities and Derivatively on Behalf of CLOUD B Against Takeover Defendants and Does 1 through 100]

108.    Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

109.     In the course of Takeover Defendants' negotiations for the purchase of CLOUD B, Takeover Defendants were informed of two lawsuits – the Federal Case and the State Case – pending between CLOUD B and its creditors.

110.    On several occasions, including a meeting on or about August 6, 2018, attended by A. WHITT where the issue was discussed at length, C. FERGUSON on behalf of himself and his affiliated entities indicated that they would negotiate directly with CLOUD B's creditors.  When A. WHITT discussed CLOUD B's debt with the Insider Defendants, he was told by BRENNER that C. FERGUSON should negotiate with CLOUD B's creditors because it was 'his money that's going to be used' for the settlements.

111.    In or around August 2018, after C. FERGUSON had increased the proposed amount of EDISON NATION stock in the purchase of CLOUD B to $3.0M, C. FERGUSON further explained the amount by stating that he placed a $10.0M enterprise on CLOUD B, and estimated the claims of CLOUD B's creditors – including the litigants in the pending lawsuits against CLOUD B – to amount to $7.0M. In other words, Plaintiffs were led to believe that Takeover Defendants had reserved $7.0M for the purpose of settling the claims of CLOUD B's creditors.

112.    In reliance upon the representations of Takeover Defendants, especially C. FERGUSON, CLOUD B refrained from negotiating a settlement with the litigants in the Federal Case and the State Case.

113.    In reliance upon the representations of Takeover Defendants, Plaintiffs retained their stock in CLOUD B, believing that Takeover Defendants intended to settle claims of creditors and to maintain CLOUD B as a viable and operational company.

114.    Plaintiffs are informed and believe, and upon such information and belief allege, that the representations of Takeover Defendants were made reckless disregard for the truth, in that the Takeover Defendants never intended to negotiate with any of CLOUD B's creditors. Indeed, on or about February 11, 2019, shortly after Takeover Defendants were successful in acquiring the majority shares in CLOUD B, CBAV1 foreclosed on all of CLOUD B's assets via the $2.3M secured note, rendering all stock in CLOUD B worthless, and leaving CLOUD B's creditors with no recourse.

115.   Plaintiffs are informed and believe, and upon such information and belief allege, that Takeover Defendants allowed CLOUD B to incur default judgments in one or both of the Federal Case and State Case. In particular, Plaintiffs are informed and believe, and upon such information and belief allege, that on or about July 30, 2019, a judgment in the amount of $1,788,306.81 was entered against CLOUD B in the Federal Case.

116.   Takeover Defendants' misrepresentations have proximately caused significant damage to Plaintiffs and to CLOUD B, in an amount to be determined at trial, but in excess of the jurisdictional threshold of this Court.

117.   Plaintiffs have been directly damaged by Takeover Defendant's misrepresentations because they were the only shareholders who were negatively impacted by Defendants' conduct, and as such, Plaintiffs may assert this cause of action directly against Takeover Defendants.

## EIGHTH CAUSE OF ACTION

### Unfair Business Practices

### [Derivatively on Behalf of CLOUD B Against Takeover Defendants and Does 1 through 100]

118.   Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

119.   Takeover Defendants' pattern of fraud and deception, including without limitation their use of proprietary and confidential information disclosed to them in confidence in the course of the parties' negotiations to acquire the $2.3M secured note held by East West Bank, the use of such note to leverage a buyout of majority shares in CLOUD B, and to foreclose on CLOUD B's assets, rendering CLOUD B stock

worthless, constitute unlawful, unfair and fraudulent business practices within the meaning of California *Business and Professions Code* section 17200 et seq.

120.    Takeover Defendants should be enjoined from reaping the benefits from their unfair business practices, and CLOUD B is entitled to restitution and/or restoration of the opportunities diverted from CLOUD B or otherwise acquired by Takeover Defendants by means of their unfair business practices, including without limitation the opportunity for CLOUD B to negotiate the acquisition of the East West Bank note at discount, or to secure a friendly lender for the acquisition of such note.

## NINTH CAUSE OF ACTION

### Civil Conspiracy

**[By Plaintiffs in Their Personal Capacities and Derivatively on Behalf of CLOUD B Against All Defendants]**

121.    Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

122.    Beginning in or around June 2017, Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to facilitate the Takeover Defendants' hostile takeover of CLOUD B's board and assets by, among other things:

(a)    Engaging in covert negotiations for the takeover of CLOUD B by Takeover Defendants without the knowledge and consent of CLOUD B's directors or shareholders;

(b)    Disclosing CLOUD B's proprietary and confidential information to Takeover Defendants in violation of CLOUD B's ANTI-DISCLOSURE RESOLUTION so that Takeover Defendants may utilize such information to gain an advantage in the ongoing negotiations for the purchase of CLOUD B;

(c)     Allowing Takeover Defendants to deal directly with East West Bank for the acquisition of a $2.3M note secured by CLOUD B's assets;

(d)     Acquisition by Takeover Defendants of CLOUD B's majority shares by means of unfair business practices; and

(e)     Foreclosing on CLOUD B's assets through the $2.3M secured note and rendering CLOUD B stock worthless.

123.    Defendants, and each of them, did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

124.    Plaintiffs have been directly damaged by Defendants' conduct because they were the only shareholders who were negatively impacted by Defendants' conduct, and as such, Plaintiffs may assert this cause of action directly against Defendants.

125.    As a proximate result of the wrongful acts herein alleged, Plaintiffs and CLOUD B have been damaged in an amount to be determined at trial, but in excess of the jurisdictional threshold of this Court.

126.    Defendants' intentional misrepresentation was intentional, malicious, oppressive, fraudulent, and despicable. Plaintiffs and CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish them for engaging in this conduct and to deter such conduct in the future.

## **TENTH CAUSE OF ACTION**

### **Breach of Fiduciary Duty**

### **[By Plaintiffs in Their Personal Capacities Against EDISON NATION]**

127.    Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

128.    On or about October 30, 2018, EDISON NATION acquired 72.16% of shares in CLOUD B. As CLOUD B's controlling shareholder, EDISON NATION owed fiduciary duties to CLOUD B and its minority shareholders.

129.    On or about February 11, 2019, EDISON NATION breached its fiduciary duties by, among other things, conspiring with Takeover Defendants to have CBAV1 foreclose on the $2.3M secured note against CLOUD B's assets, rendering CLOUD B stock worthless.

130.    EDISON NATION's breach of fiduciary duty has proximately caused significant damages to Plaintiffs and CLOUD B in an amount in excess of the statutory minimum.

131.    EDISON NATION's conduct was intentional, malicious, oppressive, fraudulent, and despicable. Plaintiffs and CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish EDISON NATION for engaging in this conduct and to deter such conduct in the future.


## ELEVENTH CAUSE OF ACTION

### Breach of Fiduciary Duty

**[Derivatively on Behalf of CLOUD B Against C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN]**


132.    Plaintiffs reallege and incorporate herein by this reference, as though fully set forth, each and every allegation of each of the preceding paragraphs of this Complaint.

133.    As alleged above, C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN have been directors of CLOUD B since being elected on or about November 11, 2018. As directors of CLOUD B, C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN owed duties of loyalty and care, among others, to CLOUD B and its shareholders.

134.   C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN breached their fiduciary duties by, among other things: failing to hold a single board meeting since their election to CLOUD B's board; failing to take any action to settle the Federal Case and/or the State Case in order to protect and preserve CLOUD B's assets; failing to take any action to save CLOUD B's assets from being pilfered by third parties including the Takeover Defendants; failing to notify CLOUD B's shareholders of the pending sale of its assets; and generally failing to take any actions at all as directors of CLOUD B.

135.   As a result of C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN's breach of fiduciary duty, CBAV1 was allowed to foreclose on all of CLOUD B's assets, and CLOUD B incurred default judgments in one or both of the Federal Case and the State Case.

136.   C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN's breach of fiduciary duty has proximately caused significant damages to CLOUD B in an amount in excess of the statutory minimum.

137.   C. FERGUSON, MCFILLIN, K. FERGUSON and VROMAN's conduct were intentional, malicious, oppressive, fraudulent, and despicable. CLOUD B should therefore be awarded punitive and exemplary damages in an amount sufficient to punish them for engaging in this conduct and to deter such conduct in the future.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment in their favor as follows:

1.   For compensatory damages to Plaintiffs and CLOUD B in an amount to be determined at trial, but in excess of $8 million;

2.   For punitive damages in an amount sufficient to punish Defendants for their intentional, malicious, oppressive, fraudulent and despicable conduct;

3.    For restitution and/or restoration of opportunities under California *Business and Professions Code* section 17200 et seq.;

4.    For reasonable attorneys' fees and costs of suit herein; and

5.    For such further and additional relief as this Court deems just and fair.

## **DEMAND FOR JURY TRIAL**

**Plaintiffs hereby demand a jury trial in this action.**

DATED:  October 27, 2020                    Respectfully submitted,

RITT, TAI, THVEDT & HODGES, LLP

TIFFANY W. TAI
*Attorneys for Plaintiffs* GERALD WHITT,
ALEXANDER WHITT, MATTHEW WHITT,
CHRISTOPHER WHITT, DEBORAH
MILAM and DAVID KNECHT