**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

VINCO VENTURES, INC.
f/k/a EDISON NATION, INC.,
CHRISTOPHER B. FERGUSON,
PHILLIP McFILLIN,
KEVIN FERGUSON, and
BRETT VROMAN,

Civil Action No.: 2:20-cv-06577

        Plaintiffs,

v.

MILAM KNECHT & WARNER, LLP,
MICHAEL D. MILAM,
GERALD WHITT,
ALEXANDER WHITT,
DAVID KNECHT,
REX OURS,
MATTHEW WHITT,
CHRISTOPHER WHITT,
DEBORAH MILAM,
TIFFANY W. TAI, and
JOHN DOES 1-50,

**JURY TRIAL DEMANDED**

        Defendants.

_____

## <u>AMENDED COMPLAINT</u>

      AND NOW COME Plaintiffs, Vinco Ventures, Inc. formerly known as Edison Nation, Inc.,

Christopher B. Ferguson, Phillip McFillin, Kevin Ferguson, and Brett Vroman, by and through their

undersigned counsel, Joshua B. Ladov, Esquire and Ladov Law Firm, P.C., filing this Amended

Complaint against Defendants, Milam Knecht & Warner, LLP, Michael D. Milam, Gerald Whitt,

Alexander Whitt, David Knecht, Rex Ours, Matthew Whitt, Christopher Whitt, Deborah Milam, Tiffany

W. Tai and John Does 1-50 and allege, based on personal knowledge and upon information and belief,

as follows:

1

## THE PARTIES

1.      Vinco Ventures, Inc. f/k/a Edison Nation, Inc. ("Edison Nation") is a corporation organized and existing pursuant to the laws of the State of Nevada, with its corporate headquarters in the Commonwealth of Pennsylvania located at 1 West Broad Street, Suite 1004, Bethlehem, PA 18018.

2.      Christopher B. Ferguson ("CFerguson") is an adult individual domiciliary of the Commonwealth of Pennsylvania with a residence address located at 1758 Red Hawk Way, Bethlehem, PA  18015.  At all times relevant herein, CFerguson was the Chief Executive Officer ("CEO") of Edison Nation and a member of the Board of Directors of Cloud b, Inc. (Cloud b") from in or around November 2018.

3.      Phillip McFillin ("McFillin") is an adult individual domiciliary of the State of New Jersey with a residence address located at 645 Maple Avenue, Haddonfield, NJ  08033.  McFillin has been a member of Cloud b's board of directors since in or around November 2018.

4.      Kevin Ferguson ("KFerguson") is an adult individual domiciliary of the State of New Jersey with a residence address located at 909 New Brunswick Ave, Phillipsburg, NJ 08865. KFerguson has been a member of Cloud b's board of directors since in or around November 2018.

5.      Brett Vroman ("Vroman") is an adult individual domiciliary of the Commonwealth of Pennsylvania with a residence address located at 1 West Broad Street, Suite 1004, Bethlehem, PA 18018. Vroman has been a member of Cloud b's board of directors since in or around November 2018.

6.      Edison Nation, CFerguson, McFillin, KFerguson and Brett Vroman, are collectively "the Plaintiffs".

7.      Milam Knecht & Warner, LLP ("MKW") is a professional limited liability partnership organized and existing pursuant to the laws of the State of California with its principal office also located in the State of California at 535 North Brand Blvd, Suite 600, Glendale, CA 91203.  MKW provided

professional accounting services to clients throughout the United States and China and was Cloud b's accounting firm from 2002 until in or around 2018, preparing tax and related financial documents for Cloud b.

8.     Michael D. Milam ("MMilam") is an adult individual domiciliary of the State of California with a principal place of business located at 535 North Brand Blvd, Suite 600, Glendale, CA 91203. MMilam is a Certified Public Accountant ("CPA"), Certified Global Management Accountant ("CGMA") and a Master of Accountancy ("MAcc"). Milam is also a partner of MKW.

9.     Gerald Whitt ("GWhitt") is an adult individual domiciliary of the State of California with a residence address located at 4105 Dover Rd, La Canada Flintridge, CA 91011-4006.  GWhitt is an attorney who is licensed to practice law in the State of California.

10.     Alex Whitt ("AWhitt") is an adult individual domiciliary of the State of California with a residence address located at 124 Waverly Drive, Pasadena, CA 91105-2514.

11.     David Knecht ("Knecht") is an adult individual domiciliary of the State of California with a principal place of business located at 535 North Brand Blvd, Suite 600, Glendale, CA 91203.  Knecht is a CPA and is also a partner of MKW.

12.     Rex Ours ("Ours") is an adult individual domiciliary of the State of California with a principal place of business located at 535 North Brand Blvd, Suite 600, Glendale, CA 91203.  Ours is a CPA and is also a partner of MKW.

13.     Matthew Whitt ("MWhitt") is an adult individual domiciliary of the State of Texas with a residence address located at 2406 Riverside Farms Rd, Austin, TX 78741-4830.

14.     Christopher Whitt ("CWhitt") is an adult individual domiciliary of the State of Texas with a residence address located at 1713 W Saint Johns Ave, Austin, TX 78757-1821.

15.     Deborah Milam ("DMilam") is an adult individual domiciliary of the State of California with a residence address located at 784 Saint Katherine Dr., Suite 600, La Canada Flintridge, CA 91011-4119.

16.     Tiffany W. Tai ("Tai") is an adult individual domiciliary of the State of California with a principal place of business located at Ritt Tai Thvedt & Holdges, LLP, 65 N. Raymond Avenue, Suite 329, Pasadena, CA 91103. Tai is an attorney who is licensed to practice law in the State of California.

17.     John Does 1-50 ("JDoes" and together with MKW, MMilam, GWhitt, AWhitt, Knecht, Ours, MWhitt, CWhitt, DMilam and Tai, "Defendants"), are unknown to Plaintiffs who therefore sue those defendants by those fictitious names.  Plaintiffs will amend this Amended Complaint to include the legal names and capacities of the JDoes as such information becomes available to Plaintiffs.

18.     The Defendants are lawyers, Certified Public Accountants, financial advisors and/or sophisticated business professionals who worked for or with Cloud b, a company formerly engaged in selling children's sleep aid toys.

19.     GWhitt, AWhitt, MWhitt, CWhitt, DMilam and Knecht (the "Whitt-Tai Complaint plaintiffs") collectively own 27.85% of Cloud b stock.  In or around January 2009, AWhitt, MWhitt, CWhitt, MMilam and Knecht, were gifted shares of stock from GWhitt.

20.     At all times relevant herein, GWhitt acted individually, in concert with, and as an authorized agent and/or representative for MKW, MMilam, Knecht, Ours, AWhitt, MWhitt, CWhitt and DMilam (collectively the "Whitt-Milam Group").

21.     At all relevant times herein, MMilam acted individually and in concert with MKW and its partners, Knecht and Ours, and knowingly and/or recklessly provided false and/or recklessly and/or negligently inaccurate and/or misleading financial information about Cloud b to Plaintiffs.

4

22.     At all times relevant herein, Tai acted as counsel for Cloud b and for Defendants, GWhitt, AWhitt, MWhitt, CWhitt, DMilam, MMilam, Knecht and Ours in connection with the filing a frivolous lawsuit against Plaintiffs.

## JURISDICTION AND VENUE

23.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiffs and Defendants.

24.     This Court has jurisdiction over Plaintiffs' related state and common law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

25.     This Court has personal jurisdiction over Defendants because they purposefully directed actions at this forum to obtain benefits from their illegal scheme as explained herein below. The exercise of jurisdiction over Defendants is also reasonable because the harm and damages caused by the scheme resulted in the Commonwealth of Pennsylvania.

26.     This Court also has personal jurisdiction over Defendants because GWhitt, individually and as the authorized agent and/or representative of the other Defendants, from his office in California and/or from various locations in California to the Eastern District of Pennsylvania, via telephone, mail and/or email, knowingly made false, disparaging and defamatory statements regarding Edison Nation's, CFerguson's and McFillin's business, conduct and dealings in connection with, among other things, Cloud b, including but not limited to allegations that: (a) Edison Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note (hereinafter defined) in violation of a certain NDA (hereinafter defined); (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's

stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified, and outside of the case and proceedings in which the Whitt-Tai Complaint was pending (collectively referred to as "Defendants' Defamatory Statements").

27.     This Court also has personal jurisdiction over Defendants because GWhitt, individually and as the authorized agent and/or representative of the other Defendants, issued mail, emails and telephone calls to the following individuals located in Pennsylvania in connection with Cloud b's bankruptcy proceeding that is pending in this district: (a) the US Trustee in the Cloud b Bankruptcy ("UST"), in or around November 2020; (b)  Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (c) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for the Cloud b Trustee from November 2020 through in or around December 2020; and (d) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee").

28.     This Court has personal jurisdiction over JDoes pursuant to 28 U.S.C. § 1965(b).

29.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant transacts his/her affairs in this district given each Defendants' participation in the scheme, as alleged herein below.

30.     Venue is further proper in this district because on October 27, 2020, Tai, GWhitt, AWhitt, CWhitt, DMilam and Knecht filed a frivolous lawsuit aimed at causing harm and substantial damages to the Plaintiffs in the Commonwealth of Pennsylvania as more fully explained herein below.

31.     Venue is further proper in this district because on November 29, 2020, Defendant GWhitt committed civil extortion and other fraudulent acts in this judicial district by claiming and publishing to third parties within this district that McFillin may have committed bankruptcy fraud and that unless a Chapter 7 bankruptcy filing by Cloud b was dismissed, he would forward his letter to the "authorities." After counsel for Cloud b rejected GWhitt's claim and posture, GWhitt and Tai contacted Lynn Feldman, the Chapter 7 trustee in the Cloud b bankruptcy case in the Commonwealth of Pennsylvania, and then contacted the UST in the Commonwealth of Pennsylvania making false and derogatory statements and allegations of criminal and other wrongful conduct, in an effort to cause McFillin to be investigated by the authorities and to apply additional pressure on the Plaintiffs to pay the Whitt-Milam Group money to settle the Whitt-Tai Complaint (defined herein below). The defamatory statements and civil extortion caused harm and substantial damages to McFillin and the other Plaintiffs within this judicial district.

32.     Venue is further proper in this district because commencing in or around October 2020 through the present, GWhitt has been knowingly and/or recklessly making false and inaccurate statements in meetings and communications taking place in this jurisdiction.

**NATURE OF THE CASE**

33.     This case arises out of the activities and conduct of Defendants commencing in or around February 2019 and continuing through the present day, resulting in damages to Plaintiffs.

34.     Edison Nation was damaged in the amount of approximately $2,145,600 as a result of its reliance on the false, inaccurate and misleading financial information provided by MKW.

35.     Edison Nation, CFerguson, McFillin, KFerguson and Vroman suffered damages in excess of $75,000 resulting from Defendants' intentional misrepresentation, negligent misrepresentation, negligence, conspiracy, unfair business practices, abuse of process, civil extortion, trade libel and defamation.

## BACKGROUND

36.     Edison Nation is a public company, which, through its subsidiaries, including SRM Entertainment Limited (HK) ("SRM") and CBAV1, LLC ("CBAV1"), engaged in the business of designing, manufacturing and selling consumer products, including toys.

37.     On or about June 4, 2018, CBAV1 purchased from East West Bank ("EWBank") a loan secured by all of the assets of Cloud b (the "EWBank Loan") with a balance of approximately $2,347,480, for a discounted amount of $500,000.  A true and correct copy of the Loan Purchase Agreement and Assignment of Loan and Security Agreement dated June 4, 2018 (with bank account numbers redacted) ("EWBank Assignment") is attached hereto and incorporated herein by reference as Exhibit "1".

38.     During the period beginning in or around May 2018 through February 12, 2019, Edison Nation's subsidiary, SRM, advanced funds to Cloud b in the approximate amount of $1,714,786 after the purchase of the EWBank Loan by CBAV1.

39.     On or about October 24, 2018, Edison Nation purchased approximately 72.15% of Cloud b's outstanding shares of common stock in exchange for shares of Edison Nation common stock with an approximate value of $2,145,600 at that time.  A true and correct copy of the Stock Purchase Agreement dated as of October 24, 2018 ("Edison SPA") is attached hereto and incorporated herein by reference as Exhibit "2".

40.     In or around January - February 2019, Edison Nation learned that Cloud b financial records could not be properly audited because the records were unreliable and unsubstantiated upon which it relied in purchasing Cloud b common stock pursuant to the Edison SPA.

41.     In an effort to protect its investment in Cloud b, Edison Nation decided to have CBAV1 exercise its rights under the EWBank Loan and foreclose on Cloud b's assets by a UCC Article 9 sale.

42.     On or about February 11, 2019, CBAV1, as the secured creditor, foreclosed on the assets of Cloud b and purchased those assets for the sum of $2,000,000. A true and correct copy of the Notice of Disposition of Collateral (Public) dated January 29, 2019 (the "UCC Disposition Notice") is attached hereto and incorporated herein by reference as Exhibit "3".

43.     At all times relevant herein, CFerguson was the CEO of Edison Nation, Vroman was the Chief Financial Officer ("CFO") of Edison Nation, KFerguson was the President of Edison Nation, and McFillin was counsel to Edison Nation.

44.     Additionally, each of CFerguson, Vroman, KFerguson and McFillin were members of Cloud b's board of directors from in or around November 2018 through the present day.

45.     GWhitt and AWhitt have been board members of Cloud b since in or around 2007 to the present day.

**PATTERN OF CONDUCT**

46.     The Whitt-Milam Group conspired to and, in fact did, defraud Edison Nation, and others, through a series of illegal activities spanning over a period of seven years between 2011 and 2018.

47.     During the period 2011 to 2013, the Whitt-Milam Group caused Cloud b to pay approximately $5,621,713 in shareholder distributions, excluding distributions disguised as professional fees, during a period where the net income of Cloud b approximated only $5,121,626.

9

48.     In 2013, shareholder distributions of $1,702,718 were made when Cloud b lost $1,716,626, and during which time the balance of the EWBank loan balance approximated $3,910,000. A true and correct copy of a 2013 Shareholder Distribution Chart is attached hereto and incorporated herein by reference as Exhibit "4".

49.     From in or around 2010 through 2018, MKW, MMilam and other accounting partners of MKW, prepared, and/or caused to be prepared, false, inaccurate and/or misleading financial reports which were premised on unreliable, unsubstantiated and unreconciled Cloud b records.

50.     MKW, MMilam, Knecht and Ours, knew, or in the exercise of reasonable diligence should have known, that the information utilized to prepare Cloud b's financial reports was unreliable, unsubstantiated, unreconciled and all of them failed to take any corrective action to address the faulty accounting records of Cloud b prior to preparing Cloud b's financial reports.

51.     From in or around 2013 through 2018, the Whitt-Milam Group pocketed in excess of $3,000,000 from Cloud b during a period when Cloud b was insolvent and had losses approximating $10,878,328. True and correct copies of a Summary of Distributions and Disguised Distributions to members of the Whitt-Milam Group, and 2011-2018 Year Over Year Sales are attached hereto and incorporated by reference herein as Exhibits "5" and "6", respectively.

52.     In or around January 2018, the Whitt-Milam Group engaged in illegal and unethical activities in furtherance of a plan to illegally own and control 100% of Cloud b assets, at the expense of EWBank, shareholders, vendors, creditors, and other stakeholders of Cloud b.

53.     In October 2020, Tai, GWhitt, AWhitt, MWhitt, CWhitt, DMilam and Knecht, filed a frivolous lawsuit against the Plaintiffs in an effort to extort money from Plaintiffs by attempting to coerce a settlement of their lawsuit.  A true and correct copy of the Complaint captioned Gerald Whitt, et al. vs. Edison Nation, Inc., et al. filed on October 27, 2020 in the Superior Court of the State of California at

docket no. 20STCV41207 (the "Whitt-Tai Complaint") is attached hereto and incorporated herein by reference as Exhibit "7".

54.     In or around November 2020, GWhitt engaged in civil extortion to leverage a settlement of the frivolous lawsuit. A true and correct copy of a November 29, 2020 email from GWhitt to Thomas Bielli, Esquire ("Atty Bielli"), Cloud b's bankruptcy counsel, and others identified therein is attached hereto and incorporated herein by reference as Exhibit "8".

55.     From in or around November 2020 to the present, GWhitt has made, and continues to make, knowingly false and/or recklessly inaccurate statements to third parties about CFerguson and McFillin.

**MILAM GROUP'S FALSE, INACCURATE AND MISLEADING FINANCIAL RECORDS**

56.     Cloud b was in the business of designing, manufacturing and selling sleep aid toys. MMilam was and still is the managing partner in the MKW accounting firm.

54.     From 2002 to in or around November 2018, MMilam was a shareholder and an advisor to Cloud b's board of directors.

55.     From 2002 to in or around 2018, MMilam and his accounting firm MKW, were engaged by Cloud b for accounting, financial management and tax services.

**CLOUD B FINANCIAL RECORDS**

56.     In or around 2013, Cloud b purchased JDE Software, a new accounting program. MKW, MMilam, Knecht, and Ours, were informed of the planned purchase (an approximate $500,000 investment) and reviewed and/or had access to the new software.

57.     As board members, board advisors, and accounting professionals, MKW, MMilam, Knecht, and Ours had a duty to establish proper internal financial systems and controls to ensure that Cloud b's financial records, reports and information ("Cloud b Financial Records") were accurate and complete in all material respects.

58.     Defendants MKW, MMilam, Knecht, and Ours each owed Cloud b a duty of care to ensure the accuracy and reliability of the Cloud b Financial Records and complete financial reports for Cloud b and any anyone else who would foreseeably rely upon these reports, including, but not limited to, Edison Nation, the purchaser of 72.15% of Cloud b Stock in October 2018.

59.     Defendants MKW, MMilam, Knecht, and Ours violated their duty to by failing to ensure the accuracy and efficacy of Cloud b's Financial Records.  These breaches include, without limitation, failing to properly review, reconcile and audit the information being generated from the JDE accounting software.  In essence, Defendants turned a blind eye to the problems with Cloud b's accounting and financial records from in or around 2011 through 2018.

60.     The Cloud b Financial Records prepared and/or overseen by MKW from in or around 2011 through 2018, were false and/or recklessly and/or negligently inaccurate and misleading and based upon unsubstantiated and unreliable records generated from the JDE Software.

61.     Edison Nation relied on the Cloud b financial records and documents prepared and/or overseen by MKW when it purchased 72.15% of Cloud b's common stock for more than $2,145,600 on or about October 24, 2018 pursuant to the Edison SPA.

62.     In or around January - February 2019, Edison Nation learned that the Cloud b Financial Records could not be properly audited because the records were unreliable, unsupported and unreconciled and did not conform to Generally Accepted Accounting Principles ("GAAP").  As a result, Edison Nation's wholly owned subsidiary foreclosed upon the assets of Cloud b, resulting in a devaluation of Edison Nation's position in Cloud b stock.

63.     In or around October 2020, Edison Nation learned of the facts supporting the negligent and/or reckless conduct of MKW and its partners, MMilam, Knecht and Ours, resulting in a financial loss to Edison Nation approximating $2,145,600 on or about February 11, 2019.

64.     After siphoning all he could out of Cloud b on behalf of himself and the Whitt-Milam Group, GWhitt, devised a scheme to defraud EWBank (who assigned all of its claims, causes of action and lawsuits to CBAV1 via the EWBank Assignment), the other shareholders and Cloud b's creditors, through a hostile takeover scheme.

### CLOUD B TAKEOVER SCHEME - SEPTEMBER 2017-MAY 2018

65.     Based on the facts and information currently known to Plaintiffs, there were multiple parties who conspired with GWhitt to carry out illegal and unethical conduct in furtherance of a scheme to improperly reap financial benefits from Cloud b and other parties, including, but not limited to, threats, demands, coercion, extortion, intimidation, frivolous litigation, and other improper conduct.

66.     In 2017, Cloud b's board determined that it needed a buyer or another investor to finance its operations or it would be forced to close its business.

67.     Seeing an opportunity to enrich himself and the Whitt-Milam Group, GWhitt hatched a scheme to defraud Cloud b, EWBank and other parties by instigating further financial problems for Cloud b so that he and other members of the Whitt-Milam Group, could own 100% of Cloud b, free and clear of liens and creditors.

68.     In or around September 2017, Edison Nation expressed an interest in purchasing the assets of Cloud b.

69.     In or around November 2017, Cloud b was indebted to GWhitt for approximately $729,500 pursuant to one or more loans which were secured by the assets of Cloud b, and pursuant to a subordination agreement with EWBank.

70.     On or about November 22, 2017, and prior to the stated maturity date of the aforementioned loan or loans, GWhitt confirmed with Richard Brenner ("Brenner"), Cloud b's CFO, receipt of a wire in the amount of $329,502.54 to pay off one of GWhitt's loans, and demanded that Brenner wire him an

additional $400,000, in satisfaction of the balance owed under another loan made to Cloud b. A true and correct copy of the November 22, 2017 email from GWhitt to Brenner is attached hereto and incorporated herein by reference as Exhibit "9".

71.     In or around January 2018, it was formally acknowledged by Cloud b's board of directors that Cloud b was in financial straits and that GWhitt's demands of Brenner that Cloud b pay off the balances of secured loans totaling approximately $700,000 would put the company into a cash emergency.

72.     As a result of GWhitt's demands, Cloud b was unable to make payments to factories for the purchase of inventory.  A true and correct copy of the January 8, 2018 Minutes of Quarterly Meeting of the Board of Directors of Cloud b is attached hereto and incorporated herein by reference as Exhibit "10".

73.     During this time and through January 2018, Cloud b continued making payments to EWBank to prevent the bank from taking any adverse action against Cloud b or its assets.

74.     In or around January 2018, GWhitt directed Cloud b to stop making loan payments to EWBank.

75.     GWhitt directed Cloud b to stop making payments, effectively devaluing the EWBank Loan, in his effort to facilitate his purchase of the EWBank Loan at a significant discount through a straw party.

76.     On January 22, 2018, GWhitt, in furtherance of his scheme, sent an email to Brenner, copying other members of the Cloud b board and MMilam, with instructions to stop any and all payments to EWBank.

77.     Specifically, GWhitt stated that "one of the keys that you and Linda are working on **is to obtain a discount of the Bank's debt on the order of 15 cents on the dollar** …."  GWhitt continued, **"…it is absolutely imperative that Cloud b not make any more voluntary payments to the Bank.**

14

**Even interest payments cannot be made. Not only is the money needed elsewhere, but the Bank needs to understand how dire Cloud b's situation really is.**"  A true and correct copy of the January 22, 2018 email from GWhitt to Brenner, et al ("GWhitt Stop Payment Email") is attached hereto and incorporated herein by reference as Exhibit "11".

78.     GWhitt and AWhitt continued to coerce Brenner and other board members to purchase the EWBank loan through a straw party.

79.     Cloud b ultimately conceded to GWhitt's demands and discontinued making payments to EWBank in or around February 2018.

80.     EWBank's note was, in fact, devalued because of GWhitt's instructions not to make loan payments, putting Cloud b in a dire financial situation of GWhitt's design.

81.     GWhitt's plan was partly successful because the EWBank Loan was devalued.

82.     However, GWhitt was unsuccessful in realizing the fruits of his illegal scheme inasmuch as neither he nor his straw party successfully negotiated a discounted purchase of the EWBank Loan.

83.     During this time, from January 2018 through May 2018, Cloud b's financial condition worsened.

84.     In or around late 2017 and early 2018, Edison Nation was still interested in purchasing the assets of Cloud b and commenced negotiations with its board of directors and the negotiating committee led by Ours and AWhitt.

85.     GWhitt did not want Edison Nation's purchase of Cloud b assets to occur unless the transaction involved GWhitt receiving cash.

86.     GWhitt believed that he and the Whitt-Milam Group would make more money by buying the EWBank Loan and foreclosing on the assets of Cloud b.

87.     GWhitt wanted to take over Cloud b for his own personal financial gain, as well as that of the other members of the Whitt-Milam Group, and so that AWhitt would become Cloud b's CEO and the Whitt-Milam Group could receive additional distributions and fees, at the expense of Cloud b's shareholders and creditors.

88.     While negotiations stalled, Edison Nation was willing to loan money to the company so that Cloud b could continue operations.

89.     To that end, Edison Nation proposed to finance Cloud b's inventory purchase orders and manufacturing in the amount of approximately $1,750,000 in accordance with a Master Purchasing Agreement with an effective date of May 18, 2018.  A true and correct copy of the Master Purchasing Agreement dated May 18, 2018 is attached hereto and incorporated herein by reference as Exhibit "12".

90.     However, Edison Nation would only continue to advance funds to Cloud b if EWBank would subordinate the EWBank Loan so that Edison Nation's affiliate would have a first lien on Cloud b's inventory purchased with Edison Nation funds.

91.     CFerguson was introduced to EWBank by Brenner and directed by Brenner to discuss subordination and/or carve out terms with EWBank.

92.     A representative of EWBank refused to subordinate the EWBank Loan and/or agree to a carve out because numerous promises had already been made and broken by Cloud b, and no loan payments had been made for several months.

93.     Instead, EWBank proposed selling the Cloud b note at a discount.

94.     CBAV1 agreed to pay $500,000 for the EWBank Loan and SRM agreed to finance Cloud b's purchase orders by an amount equal to approximately $1,750,000 under the Master Purchasing Agreement.

95.     On or about June 4, 2018, EWBank assigned all of its rights, title, and interest in and to the EWBank Loan to CBAV1 at a significant discount from the loan balance pursuant to the EWBank Assignment.

96.     From in or around May 2018 through in or around February 11, 2019, SRM made payments to or on behalf of Cloud b totaling approximately $2,888,350 and received back $1,138,564, leaving an unpaid balance of $1,741,786, not including fees and costs.  True and correct copies of payments made to and/or on behalf of Cloud b by SRM are attached hereto and incorporated herein as Exhibit "13".

97.     In total, from in or around June 2018 through in or around December 2018, CBAV1 and SRM loaned to Cloud b approximately $2,227,457, in the range of the balance of the EWBank Loan, secured by the assets of Cloud b.

98.     In or around August 2018, Edison Nation offered to purchase 100% of Cloud b's stock in exchange for restricted shares of common stock of Edison Nation with a value approximating $3,000,000. The Whitt-Milam Group determined and advised that Cloud b had little value and would be forced into bankruptcy if they did not consummate the transaction with Edison Nation.  Ours and AWhitt advised the board that Edison Nation's offer was fair.

99.     GWhitt and AWhitt said that they would not agree to sell unless they received cash for their shares, which was not a term offered by Edison Nation.

100.    Ours, MMilam and AWhitt opined and advised Cloud b's shareholders that the Edison Nation offer was fair considering Cloud b's financial condition.

101.    Ours was the only member of the Whitt-Milam Group to sell his shares pursuant to the terms proposed by Edison Nation.

102.    In or around 2017, MMilam advised the board that due to the financial condition of Cloud b, they should take any offer to buy or invest in Cloud b.

17

103.   GWhitt, AWhitt, CWhitt, MWhitt, MMilam and Knecht refused to sell their shares in exchange for shares of Edison Nation stock, insisting on cash for their shares of Cloud b stock, which collectively represented a 27.85% ownership interest in Cloud b.

104.   On October 24, 2018, Edison Nation purchased approximately 72.15% of the Cloud b Stock, leaving GWhitt, MMilam, Knecht, AWhitt, CWhitt and MWhitt with a collective 27.85% interest in Cloud b Stock.

105.   In 2018, Cloud b reported net sales of $5,709,408 and net losses of $1,045,371.

106.   After purchasing 72.15% of Cloud b's stock for $2,145,600 worth of Edison Nation common stock, and well after CBAV1 and SRM advanced approximately $1,741,786 to Cloud b, in or around February 2019 Plaintiffs recognized some of the issues with Cloud b's Financial Records, which were unable to be audited, and decided to have CBAV1 foreclose on Cloud b's assets in an effort to recoup some of its approximate $4,000,000 investment.

107.   To that end, on February 11, 2019, CBAV1 bid and purchased the Cloud b assets for $2,000,000 at an Article 9 Sale, leaving a balance of approximately $480,000 under the EWBank Loan. A true and correct copy of the Transfer Statement is attached hereto and incorporated herein by reference as Exhibit "14".

108.   In total, Edison Nation, EWBank, CBAV1 and its SRM lost approximately $4,300,000 in less than 9 months (May 2018 to February 2019) as follows:

a.   Edison Nation, Inc. $2,145,600.
     (Amount Paid for 72.15% of Cloud b Stock on October 24, 2018 which had no value as of February 11, 2019)

b.   CBAV1: $512,671
     (Balance of the secured loan as of December 15, 2020, after buying assets for $2,000,000 at the Article 9 Sale on February 11, 2019)

c.   CBAV1's affiliates: $1,714,786.

18

(Balance of advances to Cloud b and factories from in or around May 2018 through in or February 11, 2020)

109.    As a result, in part, of the Whitt-Milam Group's conduct and its scheme, Cloud b's approximate Net Sales declined from 2013 through 2019 resulting in approximate Net Losses, as summarized below:

a.   2013:  Net Sales      19,163.603     Net Loss     1,825,092
b.   2014:  Net Sales      20,010,231     Net Loss     2,833,483
c.   2015:  Net Sales      13,217,295     Net Loss     2,250,539
d.   2016:  Net Sales      11,820,973     Net Loss     1,345,946
e.   2017:  Net Sales       8,001,798     Net Loss     1,323,371
f.   2018:  Net Sales       5,454,779     Net Loss     1,300,000
g.   2019:  1/1/2019 to 2/11/2019
             Net Sales        975,937     Net Loss       128,914

## CLOUD B THEORY OF LIABILITY AGAINST EDISON NATION (TAI MEMO) - JUNE 2018-OCTOBER 2018

110.    After unsuccessfully reaping the benefits of the fraudulent scheme to buy the EWBank Loan at a discount, the Whitt-Milam Group devised a scheme to extort money out of Edison Nation and the other Plaintiffs.

111.    Specifically, in or around June 2018 through February 11, 2019, and through the present, GWhitt and AWhitt, on behalf of themselves and the other members of the Whitt-Milam Group, engaged Tai to find a legal avenue to punish Edison Nation, and its subsidiaries, for purchasing the EWBank loan at a discount.

112.    Although GWhitt's scheme to buy the EWBank loan through a straw party failed, he continued his quest to extort money from Edison Nation, its subsidiaries and its shareholders

113.    Tai was engaged by GWhitt and AWhitt to assess and develop strategies for how Cloud b would sue Edison Nation and CBAV1.

114.   Tai and GWhitt came up with a theory that CFerguson purchased the EWBank Loan through CBAV1 using Cloud b's confidential information, in violation of a certain Non-Disclosure Agreement ("NDA") between Cloud b and SRM.   A true and correct copy of the NDA is attached hereto and incorporated herein by reference as Exhibit "15".

115.    The plan also consisted of threatening lawsuits against other board members and management.

116.   Tai, who researched this issue at the direction of GWhitt and AWhitt, knew or should have known that this claim lacked merit inasmuch as there were no damages.

117.   Despite Tai's opinion that Cloud b could succeed in securing an injunction to enjoin CBAV1 from foreclosing on Cloud b assets, Cloud b decided against proceeding with this equitable remedy and instead, filed a frivolous lawsuit against Plaintiffs.

### POST-ARTICLE 9 SALE – FEBRUARY 11, 2019 THROUGH DECEMBER 2019

118.   After the February 11, 2019 Article 9 sale, Cloud b no longer had any assets.

119.   Undeterred, the Whitt-Milam Group, via GWhitt and AWhitt, continued with their scheme to extract money from Cloud b and began making demands on other members of Cloud b's board – Plaintiffs CFerguson, McFillin, KFerguson and Vroman.

120.   The Whitt-Milam Group, via GWhitt and AWhitt, initially demanded that Plaintiffs produce corporate records and Cloud b emails from in or around March 2019 through November 2019.

121.   McFillin and GWhitt first communicated via phone on May 8, 2019 during which conversation GWhitt requested documents he claimed to have been requesting for weeks, despite already being in possession of same.

122.   On May 11, 2019, McFillin helped facilitate GWhitt's access to the requested corporate documents.

123.    GWhitt continued demanding access to corporate records, specifically, certain emails. It was becoming evident these demands were a ruse and were being made in bad faith given that GWhitt and AWhitt were already in possession of all the corporate records prior to making their demands since GWhitt, as general counsel, a board member, chairman of the compensation committee, shareholder, lender and investor, had all relevant information concerning Cloud b.

124.    AWhitt, as a board member, also had all relevant information concerning Cloud b. The statements and demands of GWhitt and AWhitt were made in bad faith and resulted in adversarial discussions.

125.    GWhitt and AWhitt, in an attempt to extort a settlement on behalf of themselves and the other members of the Whitt-Milam Group, threatened the members of the Cloud b board that they would be sued for breach of their fiduciary duties - despite the absence of any supporting evidence for their threat - if the board members did not comply with their demands.

126.    Contrary to GWhitt's and AWhitt's claims, the corporate documents requested were in fact provided to all of the board members on or about May 11, 2019 and again on May 31, 2019.

127.    In or around June 2019, Ajay Gupta and Massive Dynamics were hired by Cloud b to investigate financial and other matters related to, among other things, when and how Cloud b became insolvent.

128.    In or around May 2019, GWhitt and AWhitt demanded access to the emails from Cloud b's server.

129.    After Cloud b's retention of Ajay Gupta, the emails requested by GWhitt and AWhitt were provided on or about August 14, 2019.

130.    There was no prejudice to the Whitt-Milam Group since GWhitt and AWhitt received the corporate documents and emails requested. Nonetheless, they would seek to argue that the delay in receiving the documents was a violation of a fiduciary duty that somehow caused damages to Cloud b.

131.    In or around November 2019, a shareholders meeting was scheduled to vote on the voluntary dissolution of Cloud b.  GWhitt, AWhitt, CWhitt, MWhitt, MMilam and Knecht voted against a voluntary dissolution and because the motion to dissolve, proffered by Edison Nation, was neither seconded nor put to a vote, the motion to voluntarily dissolve Cloud b failed.

132.    On February 17, 2020, Edison Nation sold its stock in Cloud b to Pearl Holdings, LLC under a certain stock purchase agreement. The consideration for same included issuance of stock in Edison Nation and indemnification for winding-up the affairs of Cloud b.

**WHITT-TAI COMPLAINT – ABUSE OF PROCESS**

133.    In or around October 2020, the Whitt-Milam Group devised a scheme to extort money by threating legal action.

134.    Notwithstanding the windfall certain members of the Whitt-Milam Group made in the course of their fraudulent scheme, and all the money Edison Nation and others lost, on or about October 22, 2020, Tai provided notice of an intent to file a lawsuit and on October 27, 2020 did file, on behalf of the "Whitt-Tai Complaint plaintiffs" the Whitt-Tai Complaint.  The Whitt-Tai Complaint named as defendants therein Edison Nation, CBAV1, SRM, CFerguson, Linda Suh, Jeff Johnson, Brenner, McFillin, KFerguson and Vroman (the "Whitt-Tai Complaint defendants") alleging claims for fraudulent concealment, breach of fiduciary duty, breach of contract, breach of confidence, intentional misrepresentation, negligent misrepresentation, unfair business practices, civil conspiracy and breach of fiduciary duty. *See* Ex. 7.

22

135.    The Whitt-Tai Complaint plaintiffs collectively own 27.85% of Cloud b stock.  In or around January 2009, AWhitt, MWhitt, CWhitt, MMilam and Knecht, were gifted shares of stock from GWhitt.

136.    The Defendants herein, by and through the Whitt-Tai Complaint, are now misusing the court process to further line their pockets by suing for damages of $8,000,000 that the Whitt-Tai plaintiffs did not suffer.

137.    The facts and claims contained in the Whitt-Tai Complaint are knowingly false rendering the Whitt-Tai Complaint frivolous. The central claims in the Whitt-Tai Complaint relate to false claims that CFerguson used confidential information to buy the EWBank Loan, in violation of the NDA, and that CFerguson promised that Edison Nation would settle or pay all of Cloud b's creditors, amounting to approximately $7,000,000.

138.    CFerguson was introduced to EWBank by Brenner in an effort to secure the investment that Edison Nation intended to make through a subsidiary.

139.    Tai, who researched the NDA claim issue at the direction of GWhitt in or around August/September 2018, knew or should have known that this claim lacked merit as there were no damages.

140.    On September 7, 2018, and at the direction of AWhitt, Tai sent an email to the board of Cloud b titled "Notice of Default/Legal Research" summarizing Tai's legal research and opinion on "Chris Ferguson's [alleged] breach of the NDA and its ramifications."   A true and correct copy of Tai's September 7, 2018 investigation email (the "Tai Investigation Email") is attached hereto and incorporated herein by reference as Exhibit "16".

141.    In the Tai Investigation Email, Tai stated that "we [Cloud b] have a very good shot – greater than 50/50 odds – of prevailing on a request to enjoin CBAV1 from foreclosing on the Note…" Tai cited

three cases, two of which were in Delaware and New York "supporting the trend in strictly enforcing the limited use of restriction in NDAs." *See*, Exhibit 16.

142.   Tai added that the Whitt-Tai Complaint plaintiffs could file for a temporary restraining order prior to a foreclosure and then seek a permanent injunction.

143.   Tai noted that the stipulation of "injunctive or other equitable relief" contained in the NDA supported her conclusion that Cloud b "should be able to enjoin CBAV1 from foreclosing."

144.   Tai further added that "if Cloud b is able to offer an alternative buyer for the Note which would make CBAV1 whole, that would remove any ability of CBAV1 to argue against a permanent injunction enjoining it from reaping the benefits of the breach." *See*, Exhibit 16.

145.   Tai further advised GWhitt and the Cloud b board that the cost of preparation of the initial injunctive relief filings alone would be upwards of $15,000-$20,000.  *See*, Exhibit 16.

146.   Cloud b never filed for injunctive relief against CBAV1.

147.   Instead, Tai filed the Whitt-Tai Complaint on behalf of the Whitt-Tai Complaint plaintiffs.

148.   Tai failed to review, and research and evaluate the facts concerning the benefits to Cloud b from CBAV1's purchase of the EWBank Loan and Edison Nation's stock purchase offer, and failed to independently interview the board and management concerning the matter, and instead, relied upon the one-side, distorted, self-serving facts provided to her by GWhitt and AWhitt.

149.   Tai's memorandum failed to address or even consider some important, mitigating facts, including that Edison Nation's subsidiary loaned over $1,750,000 and that Edison Nation made a $3,000,000 offer to purchase 100% of Cloud b Stock from its stockholders.

150.   Tai and her clients knew or should have known that their claims lacked merit; that the facts and claims in the Whitt-Tai Complaint were false; and that the Whitt-Tai Complaint plaintiffs suffered no damages, even assuming, arguendo, that the underlying claims were deemed legitimate.

151.    The first three causes of action in the Whitt-Tai Complaint make no allegations against the Plaintiffs herein.

152.    The Whitt-Tai Complaint plaintiffs' fourth cause of action for breach of contract against SRM alleges that SRM violated the NDA which allegedly caused CFerguson, Edison Nation, CBAV1 and SRM (referred to collectively in the Whitt-Tai Complaint as "Takeover Defendants") to secure the $2,300,000 note from EWBank at a steep discount. *See*, Exhibit 7.

153.    The Whitt-Tai Complaint fails to state how the Whitt-Tai Complaint plaintiffs were damaged by the actions of the Takeover Defendants therein.  More specifically, there is no explanation whatsoever in Counts Four and Five of the Whitt-Tai Complaint as to how the Whitt-Tai Complaint plaintiffs were damaged by Takeover Defendants. *See*, Exhibit 7.

154.    After financially pillaging Cloud b out of millions of dollars, the Whitt-Tai Complaint plaintiffs claim that "they were the only shareholders who were negatively impacted by the Whitt-Tai Complaint defendants' conduct…"  There are no specific damages stated. *See*, Exhibit 7.

155.    The fifth cause of action for breach of confidence is lodged against Chris Ferguson and CBAV1 for using certain proprietary and confidential information concerning Cloud b to purchase the EWBank Loan to facilitate a buyout of the majority shares in Cloud b. There are no specific damages stated. *See*, Exhibit 7.

156.    The sixth cause of action contained in the Whitt-Tai Complaint is against the Takeover Defendants for alleged intentional misrepresentation in connection with claims that that they failed to settle claims with the creditors of Cloud b. *See*, Exhibit 7.

157.    The Whitt-Tai Complaint plaintiffs allege that they did not sell their stock in Cloud b because they believed that the Takeover Defendants intended to negotiate a settlement with Cloud b's

creditors and to maintain Cloud b as a viable and operational company. Again, there are no damages specifically stated. *See*, Exhibit 7.

158.    The seventh cause of action contained in the Whitt-Tai Complaint is against the Takeover Defendants for allegedly negligently misrepresenting that they intended to settle claims with Cloud b's creditors. Again, there are no specific damages stated. *See*, Exhibit 7.

159.    The eighth cause of action contained in the Whitt-Tai Complaint is against the Takeover Defendants for alleged unfair business practices, claiming a pattern of fraud and deception, including their use of proprietary and confidential information in order to acquire the $2,300,000 secured note held by EWBank to use as leverage to buy out the majority shares in Cloud b and to foreclose on Cloud b's assets, rendering Cloud b's stock worthless. *See*, Exhibit 7.

160.    The Whitt-Tai Complaint plaintiffs claim that they are entitled to "restitution and/or restoration of the opportunities diverted for Cloud b by [Edison Nation] by means of their unfair business practices, including, without limitation the opportunity for Cloud b to negotiate the acquisition of the EWBank note at a discount, or to secure a friendly lender for the acquisition of such note. There are no specific damages stated.  *See*, Exhibit 7.

161.    The ninth cause of action contained in the Whitt-Tai Complaint is against all defendants named therein for allegedly engaging in a conspiracy to facilitate Takeover Defendants' hostile takeover of Cloud b's board and assets. Again, there are no specific damages stated. *See*, Exhibit 7.

162.    The tenth cause of action contained in the Whitt-Tai Complaint is against Edison Nation for allegedly breaching its fiduciary duty to the minority shareholders. *See*, Exhibit 7.

163.    The Whitt-Tai Complaint plaintiffs' claim that the alleged breach of fiduciary duty somehow proximately caused significant damages in excess of the statutory minimum, yet again there are no specific damages stated. *See*, Exhibit 7.

164.    The eleventh cause of action contained in the Whitt-Tai Complaint is against CFerguson, McFillin, KFerguson and Vroman for breach of fiduciary duty. *See*, Exhibit 7.

165.    The Whitt-Tai Complaint plaintiffs claim that the Whitt-Tai Complaint defendants failed to call a single meeting since their election to Cloud b's board; failed to settle the Federal or State Case referenced therein to protect Cloud b's assets; failed to take action to save Cloud b's assets from being pilfered by third parties including the Takeover Defendants; and failed to notify Cloud b's shareholders of the pending sale of its assets. The Whitt-Tai Complaint plaintiffs' claim that the alleged breaches somehow proximately caused them significant damages in excess of the statutory minimum, yet, there are no specific damages stated. *See*, Exhibit 7.

166.    While there are no damages stated in any of the counts contained in the Whitt-Tai Complaint, Tai demanded compensatory damages in excess of $8,000,000, plus punitive damages for the Whitt-Tai Complaint defendants' alleged intentional, malicious, oppressive, fraudulent and despicable conduct, and other relief.  There are no specific monetary damages stated which could possibly support a claim for compensatory damages in excess of $8,000,000. *See*, Exhibit 7.

167.    The Whitt-Tai Complaint contains patently false and misleading statements and is replete with claims designed to cause financial and reputational harm to the named defendants in order to extort money from Edison Nation and the other defendants named in the Whitt-Tai Complaint.

168.    The Whitt-Tai Complaint does not disclose that Edison Nation's affiliate provided approximately $1,750,000 in financing to Cloud b between in or around May/June 2018 and December 2018.

169.    The Whitt-Tai Complaint demands that the plaintiffs therein should be able to negotiate the buyout of the EWBank loan so that they can reap financial rewards. They also claim that they are

entitled to "restitution and/or restoration of the opportunities diverted from Cloud b by [Edison Nation and CBAV1]." *See*, Exhibit 7.

170.    The Whitt-Tai Complaint is false and misleading since it paints a picture of Edison Nation violating the NDA so that it could buy the EWBank Loan at a discount of $500,000 and foreclose on the assets at the expense of Cloud b's shareholders and creditors.

171.    However, the Whitt-Tai Complaint conveniently fails to disclose that Edison Nation and its affiliates lost millions of dollars. The restitution demanded in the Whitt-Tai Complaint amounts to a negative number.

172.    GWhitt, on behalf of himself and the Whitt-Milam Group, caused the Whitt-Tai Complaint to be filed for harassment and improper purposes in large part because he was unable to buy the EWBank Loan, as he originally planned.

173.    GWhitt and the other members of the Whitt-Milam Group failed to reap the benefits from defrauding EWBank through its purchase of the EWBank Loan through a straw party, despite their demands for management to stop making payments to EWBank.

174.    GWhitt's stated purpose was to buy the EWBank Loan for 15 cents on the dollar, covertly through his friendly straw party, so that the Whitt-Milam Group would be empowered to foreclose on the assets of Cloud b, thereby obtaining full control of Cloud b, its operations, and—in turn—its money.

175.    GWhitt's plan to devalue and defraud EWBank, on behalf of himself and the Whitt-Milam Group, succeeded but his objective to buy the EWBank Loan at a discount failed.

176.    Defendants had the opportunity to buy the EWBank Loan from January 2018 through June 4, 2018, but they simply failed to make an offer to EWBank and/or to explain to the Cloud b board whether the straw party purchase was ethical or legal, much less how it would benefit Cloud b.

177.    Importantly, GWhitt did not, and could not, represent that a straw party purchase would net Cloud b any money to enable it to continue operations.

178.    Instead, Edison Nation and its subsidiaries purchased the EWBank Loan, advanced money to Cloud b through December 2018 and decided to foreclose on Cloud b's assets in February 2019 only after it learned the true state of the Cloud b Financial Records.

179.    Edison Nation lost in excess of $2,145,600 in a little more than three (3) months, between October 24, 2018 and February 11, 2019.

180.    In total, Edison Nation and its subsidiaries lost approximately $4,000,000 over the course of nine (9) months, between May 2018 and February 11, 2019, as a result of Defendants' acts and omissions.  There is no conceivable claim in the Whitt-Tai Complaint warranting damages in an amount of $1, let alone in excess of $8,000,000.

181.    An unjustifiable demand for $8,000,000 in damages, without a modicum of specificity, is made *in terrorem* for an improper purpose.

182.    GWhitt was on actual notice of the February 11, 2019 Article 9 sale.  *See,* Exhibit 3.

183.    In addition, GWhitt, MMilam and/or Knecht, arranged for a straw party, Robert Farias, a CPA, to make an inquiry to submit a bid for the purchase of Cloud b's assets on February 8, 2019.  A true and correct copy of the email from Robert Farinas dated February 8, 2019 is attached hereto and incorporated herein as Exhibit "17".

184.    The straw party did not submit a bid to purchase the Cloud b assets.

185.    Tai, GWhitt, AWhitt, CWhitt, MMilam, DMilam, and Knecht all knew, or should have known, that the claims underlying the Whitt-Tai Complaint were meritless and that there were no damages.

186.    On October 22, 2020, McFillin arranged for a call with Tai to discuss the Whitt-Tai Complaint before it was filed.  GWhitt joined the call unannounced and made more comments and threats of wrongdoing.

187.    During the October 22, 2020 call, after the notice of claim was filed with the court, McFillin pointed out to GWhitt that even if the claims in the Whitt-Tai Complaint were found to have merit, there were still no damages.  McFillin asked GWhitt on several occasions what would have happened if he succeeded in his plan to buy the EWBank Loan through a straw party to which GWhitt initially had no reply, and then conceded that he didn't know what would have happened. McFillin suggested that a meeting be arranged among "all parties" to discuss any demands on the board of Cloud b since the Whitt-Tai Defendants failed to make any demand on the board. GWhitt stated to McFillin that he wanted an offer ("Settlement") in writing before GWhitt would agree to a meeting. After the October 22, 2020 call, Tai, GWhitt and the other Defendants refused to entertain a meeting with the Plaintiffs herein, unless there was an offer in writing.  No cash or other offer was ever made and the Whitt-Tai Defendants refused to meet with Plaintiffs herein.

188.    As of the date of this filing, GWhitt and Tai have been unable to articulate any claim for an economic loss and are continuing to attempt to piece together bases to justify damages.

189.    The demand for "compensatory damages in excess of $8,000,000" in the Whitt-Tai Complaint was made with the intent to cause Edison Nation to publicly disclose an $8,000,000 claim, which would in turn cause downward pressure on Edison Nation's common stock in furtherance of extorting a settlement.

190.    In or around October 2020 Edison Nation's market capitalization, as reported by Yahoo Finance, was approximately $20,000,000, with a significant operating loss.

191.    Tai, GWhitt, AWhitt, CWhitt, MMilam, Knecht and Ours, knew, or should have known, that an $8,000,000 demand on a company like Edison Nation would have a significant adverse impact on the value of the Edison Nation's publicly traded stock, and, in turn, shareholder investment.

192.    Tai, GWhitt, AWhitt, CWhitt, MMilam, Knecht and Ours, knew, or should have known, that an $8,000,000 demand on a small company like Edison Nation would damage its reputation.

193.    Tai, GWhitt, AWhitt, CWhitt, MMilam, Knecht and Ours, knew or should have known, that an $8,000,000 demand against CFerguson, Vroman, KFerguson, and McFillin would damage their professional and personal reputations.

194.    The facts and claims underlying the Whitt-Tai Complaint are without merit and utterly frivolous.  The abuse of process initiated by Tai and her clients is malicious and aimed at one thing – extorting money for the Whitt-Milam Group.

## TRADE LIBEL & DEFAMATION

195.    The Whitt-Tai Complaint contains defamatory statements against Edison Nation and CBAV1 for fraud, constituting trade libel, and, was filed for the stated purpose of putting negative pressure on Edison Nation's stock price, and to cause Edison Nation to spend funds to defend the frivolous lawsuit.

196.    The over-publication of the Whitt-Tai Complaint constitutes defamation because it published statements to third parties, as described in greater detail herein below, including that are either false and/or in reckless disregard of the truth.

197.    GWhitt, individually and as the authorized agent and/or representative of the other Defendants, from his office in California and/or from various locations in California to the Eastern District of Pennsylvania, via telephone, mail and/or email, knowingly made false, disparaging and defamatory statements regarding Edison Nation's, CFerguson's and McFillin's business, conduct and dealings in connection with, among other things, Cloud b, including but not limited to allegations that: (a) Edison

Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified, and outside of the case and proceedings in which the Whitt-Tai Complaint was pending (collectively referred to as "Defendants' Defamatory Statements").

198.    Defendants' Defamatory Statements were made and published to, including but not limited to, the following persons: (a) Tai, Cloud b's counsel in or around 2018 through the present; (b) Ajay Gupta, Cloud b's counsel, in or around August 2019 through December  2019; (c) Kathy Tyler, Cloud b's counsel, in or around 2017 through 2019; (d) the US Trustee in the Cloud b Bankruptcy ("UST"), in or around November 2020; (e)  Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (f) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for Cloud b Trustee from November 2020 through in or around December 2020; (g) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee"); (h) to various unsecured creditors of Cloud b from November 2020 through in or around December 2020; and (i) to investors of Edison Nation and the Securities and Exchange Commission.

## CIVIL EXTORTION

199.    On November 29, 2020, GWhitt engaged in, and continues to engage in, civil extortion by threating to report McFillin to criminal authorities for alleged bankruptcy fraud if counsel for Cloud b does not agree to immediately dismiss Cloud b's Chapter 7 bankruptcy. *See,* Exhibit 6.

200.    GWhitt did, in fact, contact the UST, and other third parties, as set forth herein above, and made knowingly false and disparaging statements with the intent to injure Plaintiffs and extort a settlement based on frivolous claims.

## DAMAGES

201.    Plaintiff, Edison Nation, demands judgment against Defendants MKW, MMilam, Knecht and Ours for, among other things, damages in excess of $2,145,600 in connection with Cloud b's Financial Records, plus attorney's fees, costs and interest, punitive damages and such other and further relief as the court deems appropriate.

202.    Plaintiffs also demand damages for abuse of process, civil extortion, unfair business practices, trade libel and defamation for amounts in excess of the jurisdictional limit of $75,000 plus attorney's fees, costs, interest, punitive damages and such other and further relief as the court deems appropriate.

## COUNT I
### Intentional Misrepresentation
**(Edison Nation v. MKW, MMilam, Knecht, Ours and JDoes)**

203.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

33

204.    From in or around 2011 through 2018, MKW, MMilam, Knecht and Ours, provided services as certified public accountants. Defendants also served as financial advisors, shareholders, board members and board advisors.

205.     In or around 2018, MWK, MMilam, Knecht and Ours made or caused to be made intentional misrepresentations concerning the Cloud b Financial Records.

206.    Specifically, from in or around 2011 through 2018, MKW, MMilam and other accounting partners of MKW, oversaw and/or prepared, or caused to be prepared, knowingly false, and/or recklessly inaccurate and misleading Cloud b Financial Records which were premised on unreliable, unsubstantiated and unreconciled Cloud b records.

207.    MKW, MMilam, Knecht and Ours, knew, or should have known, that the information utilized to prepare Cloud b's Financial Reports was unreliable, unsubstantiated and unreconciled and failed to take any corrective action to address the faulty accounting records of Cloud b prior to preparing or causing to prepare, Cloud b's financial reports.

208.    Defendants knew that the Cloud b Financial Records were unsubstantiated and unreliable at the time they were disclosed to Edison Nation in 2018 with the intention that Edison Nation would rely on the same.

209.    Defendants made these representations without any basis to believe they were true and knew the Cloud b Financial Records would be relied upon by Edison Nation in 2018.

210.    Defendants failed to take any corrective action for over 7 years and their acts and/or omissions are tantamount to intentional conduct.

211.    The information contained on Cloud b's Financial Records was material to Edison Nation's decision to purchase a substantial portion of Cloud b's common stock.

212.    Edison Nation justifiably relied upon the unsubstantiated and unreliable Cloud b Financial Records in connection with the purchase of 72.15% of Cloud b's common stock on October 24, 2018 for approximately $2,145,600.

213.    As a result of Defendants' intentional misrepresentations, Edison Nation lost approximately $2,145,600.

WHEREFORE, Vinco Ventures, Inc. f/k/a Edison Nation, Inc., demands judgment in its favor and against Defendants Milam Knecht & Warner, LLP, Michael D. Milam, David Knecht, Rex Ours and John Does 1-50 for $2,145,600 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT II**
**<u>Negligent Misrepresentation</u>**
**(Edison Nation v. MKW, MMilam, Knecht, Ours and JDoes)**

214.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

215.    In or around 2018, MWK, MMilam, Knecht and Ours made or caused to be made negligent misrepresentations concerning the Cloud b Financial Records.

216.    Specifically, from 2010 through 2018, MKW, MMilam and other accounting partners of MKW, prepared, or caused to be prepared, false, inaccurate and misleading financial reports which were premised on unreliable, unsubstantiated and unreconciled Cloud b records.

217.    MKW, MMilam, Knecht and Ours should have known that the information utilized to prepare Cloud b's financial reports was unreliable, unsubstantiated and unreconciled and failed to take

any corrective action to address the faulty accounting records of Cloud b prior to preparing Cloud b's financial reports.

218.   Defendants should have known that the Cloud b Financial Records were unsubstantiated and unreliable at the time they were disclosed to Edison Nation in 2018 with the intention that Edison Nation would rely on the same.

219.   Defendants made these representations without any basis to believe they were true and knew the Cloud b Financial Records would be relied upon by Edison Nation in 2018.

220.   Defendants failed to take any corrective action for over 7 years and their acts and/or omission are tantamount to negligent and/or reckless conduct.

221.   Edison Nation justifiably relied upon the unsubstantiated and unreliable Cloud b Financial Records in connection with the purchase of 72.15% of Cloud b's common stock on October 24, 2018 for approximately $2,145,600.

222.   As a result of Defendants' intentional misrepresentations, Edison Nation lost approximately $2,145,600.

WHEREFORE, Vinco Ventures, Inc. f/k/a Edison Nation, Inc., demands judgment in its favor and against Defendants Milam Knecht & Warner, LLP, Michael D. Milam, David Knecht, Rex Ours and John Does 1-50 for $2,145,600 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT III
### Negligence
**(Edison Nation v. MKW, MMilam, Knecht, Ours and JDoes)**

223.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

224.    From in or around 2011 through 2018, MKW provided services as certified public accountants and financial advisors to Cloud b, and its partners MMilam, Knecht and Ours, also served as financial and business advisors, shareholders, board members and board advisors to Cloud b. MMilam, Knecht and Ours, provided services through their partnership, MKW.

225.    As board members, advisors and accounting professionals, MKW, MMilam, Knecht, Ours and JDoes had a duty to establish proper internal financial systems and controls to ensure that Cloud b's financial information was accurate and complete in all material respects.

226.    MKW, MMilam, Knecht, Ours and JDoes each owed Cloud b a duty of care to prepare accurate and complete financial reports for Cloud b and any anyone else who would foreseeably rely upon them.

227.    At all relevant times herein, MKW, MMilam, Knecht, Ours and JDoes each owed a duty to Edison Nation to ensure that the Cloud b Financial Records were accurate, reconciled and reliable in connection with the purchase of Cloud b stock in October 2018.

228.    MKW, MMilam, Knecht, Ours and JDoes each violated their duty to by failing to ensure the accuracy and efficacy of Cloud b's accounting and financial records.  This includes failing to properly review, reconcile and audit the information being generated from the JDE account software.

229.    MKW, MMilam, Knecht, Ours and JDoes each violated their duty to Edison Nation by failing to assess and implement internal control processes for Cloud b's accounting system over a period of seven years, to ensure Cloud b's Financials Records were accurate and reliable.

230.    In or around October 2020, Edison Nation learned of the facts supporting the negligent and/or reckless conduct of MKW and its partners, MMilam, Knecht and Ours, resulting in a financial loss to Edison Nation on February 11, 2019.

231.    As a result of Defendants' negligent conduct, Edison Nation lost approximately $2,145,600.

WHEREFORE, Vinco Ventures, Inc. f/k/a Edison Nation, Inc., demands judgment in its favor and against Defendants Milam Knecht & Warner, LLP, Michael D. Milam, David Knecht, Rex Ours and John Does 1-50 for $2,145,600 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT IV**
**Conspiracy to Abuse Process, Unfair Business Practices, Civil Extortion, Trade Libel and Defamation**
**(Against GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, and Knecht)**

232.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

233.    Defendants, and each of them, agreed to engage in a scheme alleged herein, in that all Defendants conspired to accomplish the scheme to engage in conduct resulting in an abuse process, unfair business practices, civil extortion, trade libel, and defamation, and had a meeting of the minds to accomplish that goal through one or more unlawful acts, as alleged herein and in Counts V through X which are incorporated by reference herein, and Plaintiffs suffered harm as a result of Defendants' conduct and conspiracy.

234.    Defendants knew that their actions as alleged above were part of pattern of illegal and wrongful activity and agreed to the commission of those acts to further the conspiratorial scheme to injure Plaintiffs, for financial gain.

235.    As a direct and proximate consequence of the Defendants' conspiracy, Plaintiffs have suffered actual pecuniary damage in an amount to be proven at trial. As a direct and proximate consequence of the Defendants' conspiracy, Defendants' conduct as alleged above was done in

furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, Plaintiffs are entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

WHEREFORE, Vinco Ventures, Inc. f/k/a Edison Nation, Inc., Christopher B. Ferguson, Phillip McFillin, Kevin Ferguson and Brett Vroman demand judgment in their favor and against Defendants Gerald Whitt, Alexander Whitt, Christopher Whitt, Matthew Whitt, Michael D. Milam, and David Knecht, for an amount in excess of $75,000.00 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT V**
**Unfair Business Practices**
**(All Plaintiffs v. GWhitt, AWhitt, MWhitt, CWhitt, MMilam, DMilam, Knecht and JDoes)**

236.    Plaintiffs repeat and re-allege the allegations contained in every preceding paragraph as if fully set forth herein.

237.    As set forth herein, Defendants engaged in a pattern of fraud, deception and other unfair and illegal business practices from in or around September 2017 through to the present.

238.    GWhitt, individually and as the authorized agent and/or representative of the other Defendants, from his office in California and/or from various locations in California to the Eastern District of Pennsylvania, via telephone, mail and/or email, knowingly made false, disparaging and defamatory statements regarding Edison Nation's, CFerguson's and McFillin's business, conduct and dealings in connection with, among other things, Cloud b, including but not limited to allegations that: (a) Edison Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation

39

defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified, and outside of the case and proceedings in which the Whitt-Tai Complaint was pending (collectively referred to as "Defendants' Defamatory Statements").

239.    Defendants' Defamatory Statements were made and published to, including but not limited to, the following persons: (a) Tai, Cloud b's counsel in or around 2018 through the present; (b) Ajay Gupta, Cloud b's counsel, in or around August 2019 through December  2019; (c) Kathy Tyler, Cloud b's counsel, in or around 2017 through 2019; (d) the US Trustee,  in the Cloud b Bankruptcy ("UST"), in or around November 2020; (e)  Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (f) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for Cloud b Trustee from November 2020 through in or around December 2020; (g) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee"); (h) to various unsecured creditors of Cloud b from November 2020 through in or around December 2020; and (i) to investors of Edison Nation and the Securities and Exchange Commission.

240.    Defendants purposely made these intentional, malicious and knowingly false statements and claims to, *inter alia*, adversely affect the stock price of Edison Nation.

241.    Additionally, Defendants Gerry Whitt, AWhitt, CWhitt, MWhitt, Knecht, MMilam, and DMilam made knowingly false and/or recklessly inaccurate statements to third parties accusing CFerguson and McFillin of engaging in fraud, breach of fiduciary duty and other illegal conduct in connection with their business activities.

242.    Defendants' conduct is in violation of California's Business and Professions Code which prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive or misleading advertising…"  *Cal. Bus. & Prof. Code § 17200 et seq.  (West)*

243.    As a direct and proximate consequence of the Defendants' conduct Plaintiffs have been injured in their business and property, causing Plaintiffs to suffer monetary damages of not less than $2,145,600.

WHEREFORE, Vinco Ventures, Inc. f/k/a Edison Nation, Inc., Christopher B. Ferguson, Phillip McFillin, Kevin Ferguson and Brett Vroman demand judgment in their favor and against Defendants Michael D. Milam, Gerald Whitt, Alex Whitt, David Knecht, Matthew Whitt, Christopher Whitt, Deborah Milam, and John Does 1-50 for not less than $2,145,600 plus costs, interest, attorney's fees and punitive damages, for relief under the *California Business and Professions Code Section 17200 et seq.*, and for such other and further relief as this Honorable Court deems just and proper.

**COUNT VI**
**Abuse of Process**
**(All Plaintiffs v Tai, GWhitt, AWhitt, MWhitt, CWhitt, MMilam, DMilam, and Knecht)**

244.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

245.    On October 7, 2020, Tai, GWhitt, AWhitt, MWhitt, CWhitt, DMilam and Knecht filed the Whitt-Tai Complaint against the Plaintiffs. *See,* Exhibit 7.

246.     While MMilam is not named as a plaintiff in the Whitt-Tai Complaint, MMilam transferred his Cloud b stock to his wife, DMilam, to hold the stock on his behalf and to participate as a plaintiff in the Whitt-Tai Lawsuit on his behalf.

247.     After unsuccessfully reaping the benefits of the fraudulent scheme to buy the EWBank Loan at a discount, the Whitt-Milam Group devised a scheme to extort money out of Edison Nation and the other Plaintiffs.

248.     Specifically, GWhitt and AWhitt, on behalf of themselves and the other members of the Whitt-Milam Group, engaged Tai to find a legal avenue to punish Edison Nation, and its subsidiaries, for purchasing the EWBank loan at a discount.

249.     The central claim in the Whitt-Tai Complaint relates to a knowingly false claim that CFerguson used confidential information to buy the EWBank Loan, in violation of the NDA.

250.     Tai stated that "we [Cloud b] have a very good shot – greater than 50/50 odds – of prevailing on a request to enjoin CBAV1 from foreclosing on the Note…" Tai cited three cases, two of which were in Delaware and New York "supporting the trend in strictly enforcing the limited use of restriction in NDAs." *See,* Exhibit 16.

251.     Tai added that the Whitt-Tai Complaint plaintiffs could file for a temporary restraining order prior to a foreclosure and then seek a permanent injunction. *See,* Exhibit 16.

252.     Tai noted that the stipulation of "injunctive or other equitable relief" contained in the NDA supported her conclusion that Cloud b "should be able to enjoin CBAV1 from foreclosing."  *See,* Exhibit 16.

253.     Tai further added that "if Cloud b could offer an alternative buyer for the Note [that this] would make CBAV1 whole [and] that would remove the ability of CBAV1 to argue against a permanent injunction enjoining it from receiving the benefits of the breach."  *See,* Exhibit 16.

42

254.    Tai advised GWhitt, and the Cloud b board, that it would cost $15,000-$20,000 to file for injunctive relief.  *See,* Exhibit 16.

255.    No action was taken by Cloud b to file for injunctive relief against CBAV1.

256.    Instead, Tai, at the direction of the Whitt-Tai Complaint plaintiffs filed the Whitt-Tai Complaint with knowledge that the facts and claims were frivolous and that there were no damages suffered.

257.    While there are no specific money damages stated in any of the counts contained in the Whitt-Tai Complaint, Tai demanded compensatory damages in excess of $8,000,000, plus punitive damages.

258.    Tai, GWhitt, AWhitt, MWhitt, CWhitt, MMilam, DMilam, and Knecht, knew, or should have known, that an $8,000,000 demand on a company like Edison Nation would have a significant adverse impact on the value of the Edison Nation's publicly traded stock, and, in additionally or alternatively, shareholder investment. Defendants' conduct was the proximate cause of Plaintiff's damages to their business and property.

259.    The purpose of the suit was not to litigate viable legal claims.

260.    Specifically, the Whitt-Tai Complaint was not filed to adjudicate the (1) breach of contract claim against SRM; (2) the breach of confidence claim against CFerguson and/or CBAV1; (3) the intentional misrepresentation claim against SRM, CBAV1 and/or CFerguson; (4) the negligent misrepresentation claim against SRM, CBAV1 and/or CFerguson; (5) the unfair business practices claim against SRM, CBAV1 and/or CFerguson; (6) the civil conspiracy claim against Plaintiffs; (7) the breach of fiduciary duty claim against Edison Nation; or (8) the breach of fiduciary claim against CFerguson, McFillin, KFerguson and/or Vroman.

261.     Rather, the Whitt-Tai Complaint, filed on behalf of Defendants, was filed as a tactical, retaliatory weapon to coerce Plaintiffs to make payment for matters completely unrelated to the allegations contained in the Tai-Whitt Complaint.  The Defendants' use of the Whitt-Tai Complaint after the filing of same was for an improper purpose other than to adjudicate the false claims contained in the Whitt-Tai Complaint.

262.     Specifically, the purpose of the Whitt-Tai Complaint and Defendants' actions after its filing, was part of an on-going scheme by them to retain and/or continue to collect the illegitimate distributions and other financial rewards that they were receiving prior to the sale of Cloud b's assets to CBAV1.

263.     The Defendants' actions, after the filing of the Whitt-Tai Complaint, were an attempt by Defendants to interfere with the Cloud b bankruptcy proceeding.

264.     To that end, following the filing of the Whitt-Tai Complaint, in or around November 2020, GWhitt intentionally forwarded the frivolous and blatantly inaccurate Whitt-Tai Complaint to and/or communicated directly with the UST and the UST's counsel, making knowingly false and/or inaccurate statements concerning the Plaintiffs herein.

265.     In or around November 2020, GWhitt intentionally forwarded the frivolous and inaccurate Whitt-Tai Complaint to and through in or around December 2020 communicated with Cloud b's bankruptcy and the trustee's counsel, in an attempt to force the dismissal of the Cloud b bankruptcy and to make knowingly false and/or recklessly in accurate statements concerning the Plaintiffs herein.

266.     In or around November 2020, GWhitt intentionally forwarded the frivolous and inaccurate Whitt-Tai Complaint to and through in or around December 2020 communicated with CBAV1's bankruptcy trustee in an attempt to adversely affect Plaintiffs' reputation and credibility by making knowingly false and/or recklessly in accurate statements concerning the Plaintiffs herein.

267.    Following the filing of the Whitt-Tai Complaint and the filings of the October 30, 2020 Chapter 7 bankruptcy on behalf of Cloud b and Chapter 11 bankruptcy on behalf of CBAV1, service of court documents to Plaintiffs was attempted.

268.    Following the filing of the Whitt-Tai Complaint and Chapter 7 bankruptcy on behalf of Cloud b, commencing on November 29, 2021, GWhitt committed civil extortion when he indicated that they would report McFillin to the authorities for bankruptcy fraud unless the Chapter 7 bankruptcy was dismissed. GWhitt used the illegal threats in an attempt to have the automatic stay eliminated so that he and his co-Defendants could continue to pursue the frivolous claims.

269.    GWhitt utilized the Whitt-Tai Complaint after its filing at the behest of, and for the benefit of, himself and GWhitt, AWhitt, MWhitt, CWhitt, DMilam and Knecht.

WHEREFORE, Vinco Ventures, Inc. f/k/a Edison Nation, Inc., Christopher B. Ferguson, Phillip McFillin, Kevin Ferguson and Brett Vroman demand judgment in their favor and against Defendants Michael D. Milam, Gerald Whitt, Alex Whitt, David Knecht, Rex Ours, Matthew Whitt, Christopher Whitt, Deborah Milam, Tiffany A. Tai, and John Does 1-50 for an amount in excess of $75,000.00 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

### COUNT VII
### Civil Extortion
### (McFillin v. GWhitt)

270.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

271.    On October 30, 2020, Cloud b, by and through its attorney Thomas Bielli, Esquire, filed a voluntary Chapter 7 Bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

272.    On November 29, 2020, GWhitt accused McFillin of committing bankruptcy fraud for, among other things, not having the authority to file the Chapter 7 Bankruptcy Petition and for not reporting the $8,000,000 claim set forth in the frivolous Whitt-Tai Complaint as an asset of the Cloud b bankruptcy estate. In fact, the Whitt-Tai lawsuit was reported on the bankruptcy schedule.

273.    On November 29, 2020, GWhitt threatened Thomas Bielli, Esquire that if the Chapter 7 Bankruptcy Petition was not dismissed that he would report the matter "to the authorities." *See,* Exhibit 8.

274.    GWhitt's threat, contained at the end of his email, states that "[i]f you do not confirm your intention to act immediately, I will forward a copy of this letter to the appropriate authorities." *See*, Exhibit 8.

275.    GWhitt's ultimate threat appeared after the following verbiage contained in his email:

a.    "The [bankruptcy] schedules are verified under penalty of perjury by McFillin."

b.    "[McFillin's] actions are probably deliberate, and could be considered acts of bankruptcy fraud."

c.    "[W]hile I am on the subject of fraud . . . ."

d.    "I also think that [McFillin] should be aware that the filing of process in the wrong jurisdiction for the purpose of gaining an advantage constitutes the tort of abuse of process in California. This will subject [McFillin] to additional liability."

*See*, Exhibit 8.

276.    McFillin believed that GWhitt was threatening criminal or civil investigation and/or prosecution by federal authorities such as the UST or the Cloud b Trustee were the Cloud b Bankruptcy not dismissed by Attorney Bielli on the instruction of McFillin.

277.    GWhitt made these threats and demands with an intent to cause McFillin to have the Cloud b Bankruptcy dismissed – without GWhitt so much has having filed a motion to challenge the Cloud b Bankruptcy, despite his laundry list of alleged improprieties in his November 29, 2020 email – to have the stay imposed by the Cloud b Bankruptcy lifted to clear the way for GWhitt and the Whitt-Tai Complaint Plaintiffs to obtain money or property from McFillin and the other Plaintiffs herein via extortionate settlement demands in connection with the  frivolous Whitt-Tai Complaint and the demands for $8,000,000 plus punitive damages contained therein.

278.    California's Penal Code prohibits extortion, which is defined as "the obtaining of property from another, with his consent,… induced by a wrongful use of force or fear," including by way of various threats. *Ann.Cal.Penal Code sec. 518.*

279.    California's Penal Code specifically prohibits GWhitt's threats and/or conduct. *Ann.Cal.Penal Code sec. 519.*

280.    California's Penal Code further provides that "Every person who, with intent to extort property or other consideration from another, sends or delivers … any threat such as is specified in Section 519 is punishable in the same manner as if such property or other consideration were actually obtained by means of such threat." *Ann.Cal.Penal Code sec. 523.*

281.    California State law imposes civil liability for violating the above referenced Penal Code sections.

282.    California permits a cause of action "for the recovery of money obtained by the wrongful threat of criminal or civil prosecution, [regardless of] whether the claim is denominated as 'extortion, menace, or duress.'" Wilson v. Ridgeway, No. 20-CV-00381-PJH, 2020 WL 4590241, at *2 (N.D. Cal. Aug. 7, 2020).

283.     As a direct and proximate cause of GWhitt's threats, McFillin was in fear that he would lose money and property if he did not comply with GWhitt's demands to dismiss the bankruptcy case.  As a direct and proximate cause of GWhitt's threats, McFillin was in fear that he would be accused of a crime and be subject to a criminal investigation, thus adversely affecting his personal and business reputation, his ability to practice law and support his family, and his finances, money and property.

WHEREFORE, Phillip McFillin, demands judgment in its favor and against Defendant Gerald Whitt for an amount in excess of $75,000.00 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT VIII
## Trade Libel
### (Edison Nation v. Tai, GWhitt, AWhitt, MWhitt, CWhitt, MMilam, DMilam, Knecht and JDoes)

284.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

285.     GWhitt, individually and as the authorized agent and/or representative of the other Defendants, from his office in California and/or from various locations in California to the Eastern District of Pennsylvania, via telephone, mail and/or email, knowingly made false, disparaging and defamatory statements regarding Edison Nation's, CFerguson's and McFillin's business, conduct and dealings in connection with, among other things, Cloud b, including but not limited to allegations that: (a) Edison Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct

intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified, and outside of the case and proceedings in which the Whitt-Tai Complaint was pending (collectively referred to as "Defendants' Defamatory Statements").

286.    Defendants' Defamatory Statements were made and published to, including but not limited to, the following persons: (a) Tai, Cloud b's counsel in or around 2018 through the present; (b) Ajay Gupta, Cloud b's counsel, in or around August 2019 through December  2019; (c) Kathy Tyler, Cloud b's counsel, in or around 2017 through 2019; (d) the office of the UST in the Cloud b Bankruptcy in or around November 2020; (e)  Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (f) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for Cloud b Trustee from November 2020 through in or around December 2020; (g) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee"); (h) to various unsecured creditors of Cloud b from November 2020 through in or around December 2020; and (i) to investors of Edison Nation and the Securities and Exchange Commission.

287.    Defendants knew such statements were false, disparaging and defamatory at the time they were made.

288.    the Whitt-Tai Complaint plaintiffs intentionally, maliciously and knowingly made false claims that they suffered $8,000,000 in damages against Edison Nation, CBAV1, its CEO, CFO, President and counsel.

289.    An unjustifiable demand for $8,000,000 in damages, without a modicum of specificity, is made *in terrorem* for an improper purpose.

290.    Defendants' statements relating to Edison Nation were intentionally, maliciously and knowingly made in order to injure Plaintiffs' business and business reputation.

291.    Upon information and belief, Defendants purposely made these intentional, malicious and knowingly false statements and claims to, *inter alia*, adversely affect the stock price of Edison Nation.

292.    As a result of engaging in the intentional conduct set forth herein, Plaintiff has suffered actual pecuniary damage in lost prospective business with existing and potential clients that were deterred from doing business with Plaintiffs in an amount to be proven at trial.

293.    As a result of engaging in the intentional conduct set forth herein, Plaintiff has suffered actual pecuniary damage in lost prospective financing with existing and potential investors that were deterred from doing business with Plaintiffs in an amount to be proven at trial.

WHEREFORE, Vinco Ventures, Inc. f/k/a Edison Nation, Inc., Christopher B. Ferguson, Phillip McFillin, Kevin Ferguson and Brett Vroman demand judgment in their favor and against Defendants Michael D. Milam, Gerald Whitt, Alex Whitt, David Knecht, Matthew Whitt, Christopher Whitt, Deborah Milam, Tiffany A. Tai, and John Does 1-50 for an amount in excess of $75,000.00 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT IX
### Defamation
**(CFerguson v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht and JDoes)**

294.    Plaintiff, CFerguson, repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

295.    Prior to October 22, 2020, Defendants made knowingly false and/or recklessly inaccurate statements to third parties including, but not limited to, other members of the Whitt-Milam Group, accusing CFerguson of engaging in fraud, breach of fiduciary duty and other illegal conduct.

296.    GWhitt, individually and as the authorized agent and/or representative of the other Defendants, from his office in California and/or from various locations in California to the Eastern District of Pennsylvania, via telephone, mail and/or email, knowingly made false, disparaging and defamatory statements regarding Edison Nation's, CFerguson's and McFillin's business, conduct and dealings in connection with, among other things, Cloud b, including but not limited to allegations that: (a) Edison Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified, and outside of the case and proceedings in which the Whitt-Tai Complaint was pending (collectively referred to as "Defendants' Defamatory Statements").

297.   In addition, upon information and belief, after October 22, 2020, GWhitt continued to make statements to third parties including, but not limited to, the chapter 7 trustee and her counsel in the Cloud b Chapter 7 Bankruptcy, accusing CFerguson of engaging in fraud and other illegal conduct.

298.   Defendants' Defamatory Statements were made and published to, including but not limited to, the following persons: (a) Tai, Cloud b's counsel in or around 2018 through the present; (b) Ajay Gupta, Cloud b's counsel, in or around August 2019 through December  2019; (c) Kathy Tyler, Cloud b's counsel, in or around 2017 through 2019; (d) the US Trustee in the Cloud b Bankruptcy ("UST"), in or around November 2020; (e)  Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (f) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for Cloud b Trustee from November 2020 through in or around December 2020; (g) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee"); (h) to various unsecured creditors of Cloud b from November 2020 through in or around December 2020; and (i) to investors of Edison Nation and the Securities and Exchange Commission.

299.   The above-referenced third parties reasonably understood that the statements made were about CFerguson.

300.   Both on its face, and because of the facts and circumstances known to persons who read or heard the statements, it was reasonably understood that Defendants meant to convey that CFerguson engaged in fraudulent and other wrongful conduct, should not be trusted or believed, and discouraged others from associating or dealing with him personally and professionally.

301.   Defendants' defamatory statements are false.

302.   Defendants knew these statements were false when they made them and/or they had serious doubts about the truth of their statements.

303.    Defendants' false statements are per se defamation in that certain statements impugns CFerguson's professional character or standing, and implies that CFerguson committed a crime of moral turpitude.

304.    As the direct and proximate result of Defendants' defamatory statements, CFerguson has suffered damages in an amount to be proven at trial, including but not limited to, harm to his business, trade, profession and personal and business reputation, expenses he has had to pay as the result of the defamatory statements, emotional harm and exposure to contempt, ridicule, and shame.

WHEREFORE, Christopher B. Ferguson, demands judgment in its favor and against Defendants Gerald Whitt, Tiffany A. Tai, Alexander Whitt, Christopher Whitt, Matthew Whitt, Michael D. Milam, Deborah Milam, David Knecht and John Does 1-50 for an amount in excess of $75,000.00 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT X
### Defamation
**(McFillin v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht and JDoes)**

305.    Plaintiff, McFillin, repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

306.    Prior to October 22, 2020, Defendants made knowingly false and/or recklessly inaccurate statements to third parties including, but not limited to, other members of the Whitt-Milam Group, accusing McFillin of engaging in fraud, breach of fiduciary duty and other illegal conduct.

307.    GWhitt, individually and as the authorized agent and/or representative of the other Defendants, from his office in California and/or from various locations in California to the Eastern District of Pennsylvania, via telephone, mail and/or email, knowingly made false, disparaging and defamatory statements regarding Edison Nation's, CFerguson's and McFillin's business, conduct and dealings in

connection with, among other things, Cloud b, including but not limited to allegations that: (a) Edison Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified, and outside of the case and proceedings in which the Whitt-Tai Complaint was pending (collectively referred to as "Defendants' Defamatory Statements").

308.    Defendants' Defamatory Statements were made and published to, including but not limited to, the following persons: (a) Tai, Cloud b's counsel in or around 2018 through the present; (b) Ajay Gupta, Cloud b's counsel, in or around August 2019 through December 2019; (c) Kathy Tyler, Cloud b's counsel, in or around 2017 through 2019; (d) the Office of the US Trustee, in the Cloud b Bankruptcy ("UST"), in or around November 2020; (e) Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (f) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for Cloud b Trustee from November 2020 through in or around December 2020; (g) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee"); (h)

to various unsecured creditors of Cloud b from November 2020 through in or around December 2020; and (i) to investors of Edison Nation and the Securities and Exchange Commission.

309.    In addition, on or about November 29, 2020, Defendant Gerry Whitt made statements to Thomas Bielli, Esquire Tai and other parties accusing McFillin of engaging in fraud, violation of criminal laws and other illegal conduct.

310.    In addition, upon information and belief, after November 29, 2020, Defendant, GWhitt, while represented by Tai, made statements to the Cloud b Trustee, the UST and other third parties accusing McFillin of engaging in fraud, violation of criminal laws and other illegal conduct.

311.    The above-referenced third parties reasonably understood that the statements were about McFillin.

312.    Both on its face, and because of the facts and circumstances known to persons who read or heard the statement, it was reasonably understood that Defendants meant to convey that McFillin engaged in fraudulent and other wrongful conduct, should not be trusted or believed, and discouraged others from associating or dealing with him personally and professionally.

313.    Defendants' defamatory statements were false.

314.    Defendants knew these statements were false or had serious doubts about their veracity at the time they were made to third parties.

315.    Defendants' false statements are per se defamation in that certain statements impugns McFillin's professional character or standing, and implies that McFillin committed a crime of moral turpitude.

316.    As the direct and proximate result of Defendants' defamatory statements, McFillin has suffered damages in an amount to be proven at trial, including but not limited to, harm to his business, trade, profession and personal and business reputation, expenses he has had to pay as the result of the

defamatory statements, emotional harm and exposure to contempt, ridicule, and shame and threats of criminal investigation.

WHEREFORE, Phillip McFillin, demands judgment in its favor and against Defendants Gerald Whitt, Tiffany A. Tai, Alexander Whitt, Matthew Whitt, Christopher Whitt, Michael D. Milam, Deborah Milam, David Knecht and John Does 1-50 for an amount in excess of $75,000.00 plus costs, interest, attorney's fees and punitive damages, and for such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury.


Respectfully Submitted,

**LADOV LAW FIRM, P.C.**

Dated: March 29, 2021

JOSHUA B. LADOV, ESQUIRE
JEFFERSON CENTER, SUITE 2820
1101 MARKET STREET
PHILADELPHIA, PA 19107-2993
267-687-8855
jladov@ladovlaw.com
Counsel for Plaintiffs