UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

VINCO VENTURES, INC, f/k/a EDISON      :
NATION INC, *et al.*,      :
     :
        Plaintiffs,      :
     :
          v.      :     No. 5:20-cv-6577
     :
MILAM KNECHT & WARNER, LLP, *et al.*,      :
     :
        Defendants.      :

## O P I N I O N
**Motion to Stay or Dismiss, ECF No. 31 – Granted in part and Denied in part**

**Joseph F. Leeson, Jr.**                                         **September 28, 2021**
**United States District Judge**

## I.    INTRODUCTION

This case involves claims by Plaintiffs[1] against Defendants[2] that arise from the filing of a lawsuit in California and various business transactions that underlie that California Lawsuit. Plaintiffs claim that the California lawsuit was frivolous and that defamatory statements made in conjunction with that lawsuit resulted in harmful effects to Plaintiffs, some of which are domiciled in Pennsylvania. Plaintiffs also claim that these Defendants, David Knecht; Michael Milam ("MMilam"); Milam, Knecht, & Warner, LLP ("MKW"); and Rex Ours, prepared false or inaccurate financial statements that resulted in Plaintiffs suffering financial injury. Plaintiffs assert several claims against the named Defendants, including intentional misrepresentation,

---

[1]    Plaintiffs Vinco Ventures, Inc., formerly known as Edison Nation, Inc., Christopher B. Ferguson ("CFerguson"), Phillip McFillin, Kevin Ferguson ("KFerguson"), and Brett Vroman.
[2]    Defendants Milam Knecht & Warner, LLP, Michael D. Milam, Gerald Whitt ("GWhitt"), Alexander Whitt ("AWhitt"), David Knecht, Rex Ours, Matthew Whitt ("MWhitt"), Christopher Whitt ("CWhitt"), Deborah Milam ("DMilam"), Tiffany W. Tai, and John Does 1-50.

negligent misrepresentation, negligence, abuse of process, trade libel, conspiracy, claims under the California Unfair Competition Law ("UCL"), and defamation.  Defendants Knecht, MMilam, MKW, and Ours collectively[3] move to stay the proceedings against them under the *Colorado River* doctrine, or in the alternative, dismiss Plaintiffs' Amended Complaint for improper venue and failure to state a claim.

This Court lacks the power to abstain from exercising jurisdiction in this matter under *Colorado River*.  This Court further concludes that venue in this district is improper over Counts I, II, and III because Plaintiffs fail to allege any substantial events or omissions giving rise to those claims that took place in this district.  Moreover, Plaintiffs fail to state a claim under Counts IV, V, VI, VIII, IX, or X, and accordingly, this Court holds any decision on whether to exercise pendent venue over Counts I, II, and III in abeyance pending expiry of Plaintiffs' deadline to amend.

## II.   BACKGROUND

The background is taken, in large part, from the allegations in Plaintiffs' Amended Complaint.  Plaintiff Vinco Ventures was formerly known as Edison Nation, Inc. ("Edison"), and consistent with the parties' briefing, it is referred to as Edison throughout this Opinion.  Edison, through its subsidiaries, SRM Entertainment Limited (HK) ("SRM") and CBAV1, LLC ("CBAV1"), engaged in the manufacture and sale of consumer products.  *See* Amend. Compl. ¶ 36.  Edison is organized under the laws of Nevada, and its principal place of business is in Pennsylvania.  *See id.* ¶ 2.  Cloud b is a company that engaged in the sale of children's sleep aid toys.  *See id.* ¶ 18.  Cloud b is incorporated in California with its principal place of business in the same.  *See* Resp. 2, ECF No. 36-3.

---

[3]        Collectively, these Defendants are referred to as the MKW Defendants.

On or about June 4, 2018, Edison, through its subsidiary, CBAV1, purchased a loan that was secured by all of the assets of Cloud b.  *See id.* ¶ 37.  On October 24, 2018, Edison purchased approximately 72.15% of Cloud b's shares.[4]  *See id.* ¶ 39.  In early 2019, Edison learned that Cloud b's financial records could not be audited because they were "unreliable" and "unsubstantiated."  *See id.* ¶ 40.  Accordingly, Edison foreclosed on Cloud b's assets, exercising its right under the terms of the loan agreement.  *See id.* ¶ 41.  On February 11, 2019, Edison Nation, through CBAV1, purchased those foreclosed assets for $2,000,000.  *See id.* ¶ 42.

Edison claims that Cloud b's minority shareholders engaged in actions to defraud Edison between 2011 and 2018.  *See id.* ¶ 46.  From 2011 to 2013, Plaintiffs allege that certain Defendants caused Cloud b to pay $5,621,713 in shareholder distributions, during a period where the net income of Cloud b was only $5,121,626.  *See id.* ¶ 47.  From 2013 to 2018, Plaintiffs allege that some Defendants collected in excess of $3,000,000 in shareholder distributions during a period where Cloud b had losses of approximately $10,878,328.  *See id.* ¶ 51.  Edison also claims that MKW, Cloud b's accounting firm, was preparing false or inaccurate financial reports for Cloud b.  *See id.* ¶¶ 49-50.  During the relevant period, Knecht, MMilam, and Ours were certified public accounts with MKW who assisted in the preparation of these financial records. *See id.* ¶¶ 204-05.  These alleged activities are discussed in more detail below.

### A.    Cloud b Takeover Scheme

Plaintiffs allege that GWhitt conspired with other Defendants in an effort to effectuate a takeover of Cloud b.  *See id.* ¶¶ 65, 67.  In approximately November of 2017, Cloud b was indebted to GWhitt for approximately $729,500 pursuant to loans secured by Cloud b's assets.

---

[4]    Following this purchase, Defendants GWhitt, AWhitt, MWhitt, CWhitt, MMilam, and Knecht collectively owned the remaining minority share of Cloud b.  *See* Am. Compl. ¶ 104. This group is referred to as the "minority shareholders."

*See id.* ¶ 69.  On November 22, 2017, Cloud b paid GWhitt $329,502.54 to satisfy one of the outstanding loans.  *See id.* ¶ 70.  At that same time, GWhitt requested that Cloud b's Chief Financial Officer, Richard Brenner, wire him an additional $400,000 to satisfy the remaining balance of the loans.  *See id.*  In January of 2018, Cloud b's board acknowledged that GWhitt's demand for the remaining balance of the loans would place Cloud b in "financial straits."  *See id.* ¶ 71.  GWhitt's demand for repayment made it so Cloud b was unable to make payments for inventory.  *See id.* ¶ 72.  Around that same time, GWhitt directed Cloud b to stop making payments on the loan it had with East West Bank ("EWBank").  *See id.* ¶ 74.  Plaintiffs allege that GWhitt did so in an effort to devalue the EWBank loan so that he could purchase it at a discount.  *See id.* ¶ 75.

In late 2017 and early 2018, Edison showed interest in purchasing the assets of Cloud b through purchase of the EWBank loan.  *See id.* ¶ 84.  Plaintiffs allege that GWhitt did not want this purchase to occur, believing there was more money to be made by purchasing the EWBank loan himself.  *See id.* ¶¶ 85-86.  A representative of EWBank met with CFerguson, the CEO of Edison, to discuss purchasing the Cloud b loan that EWBank held.  *See id.* ¶¶ 91-93.  CBAV1, Edison's subsidiary, agreed to pay $500,000 for the loan.  *See id.* ¶ 94.  On June 4, 2018, the purchase of the loan was effectuated.  *See id.* ¶ 95.  As part of the agreement, SRM, another Edison subsidiary, agreed to finance Cloud b's purchase orders for approximately $1,750,000. *See id.* ¶ 94.

From May 2018 until February 2019, SRM made payments under that agreement totaling $2,888,350, and it received $1,138,564 in return, which left an unpaid balance.  *See id.* ¶ 96. Plaintiffs allege that, from June 2018 to December 2018, CBAV1 and SRM loaned approximately $2,227,457 to Cloud b.  *See id.* ¶ 97.  Around August 2018, Edison offered to

purchase 100% of Cloud b's stock for a total value of $3,000,000 to be paid in the form of Edison shares.  *See id.* ¶ 98.  Only one shareholder, Rex Ours, agreed to sell his shares on the terms offered by Edison.  *See id.* ¶ 101.  On October 24, 2018, Edison purchased approximately 72.15% of Cloud b's stock.  *See id.* ¶ 104.  The remaining minority shareholders[5] held the remaining 27.85%.  *See id.*

### B.      Cloud b's Financial Statements and Article 9 Sale

In or around February of 2019, Plaintiffs noticed issues with Cloud b's financial records, which were unable to be audited.  *See id.* ¶ 106.  At that time, Plaintiffs decided to foreclose on Cloud b's assets.  *See id.*  CBAV1 purchased Cloud b's assets at an Article 9 sale for $2,000,000.  *See id.* ¶ 107.  At the time of that purchase, a balance of $480,000 remained on the EWBank loan.  *See id.*  Over the period beginning May 2018 and ending February 2019, Edison and its subsidiaries allege that they lost approximately $4,300,000.  *See id.* ¶ 108.

### C.      Post-Article 9 Sale

After the Article 9 Sale of Cloud b's assets, GWhitt and AWhitt requested corporate records and Cloud b emails for the period March 2019 to November 2019.  *See id.* ¶ 120.  On May 11, 2019, McFillin provided GWhitt access to the requested documents.  *See id.* ¶ 122.  Despite this production, GWhitt continued to demand corporate records from members of the Cloud b board.  *See id.* ¶  125.  In June 2019, Cloud b hired Ajay Gupta to investigate Cloud b's path to insolvency.  *See id.* ¶ 127.  At a board meeting in November 2019, a vote was held to voluntarily dissolve Cloud b.  *See id.* ¶  131.  The minority shareholders voted against the measure, and the vote to dissolve the company failed.  *See id.*

---

[5]      GWhitt, AWhitt, CWhitt, MWhitt, MMilam and Knecht.

D.      **Filing of the California Lawsuit**

In or around June 2018, GWhitt and AWhitt engaged Tiffany W. Tai, a California attorney. *See id.* ¶ 111.  Tai was engaged to develop a strategy for the minority shareholders of Cloud b to recover against Edison and CBAV1. *See id.* ¶ 113.  On October 27, 2020, the minority shareholders of Cloud b filed suit with Tai as their attorney.[6] *See id.* ¶ 53.  The California Lawsuit named Edison, CBAV1, SRM, CFerguson, Linda Suh, Jeff Johnson, Richard Brenner, McFillin, KFerguson, and Vroman. *See id.* ¶ 134.  Therein, the minority shareholders alleged claims for fraudulent concealment, breach of fiduciary duty, breach of contract, breach of confidence, intentional misrepresentation, negligent misrepresentation, unfair business practices, civil conspiracy, and breach of fiduciary duty. *See id.*  Plaintiffs allege that the California Lawsuit is a misuse of process, which was designed to extort $8,000,000 from Plaintiffs. *See id.* ¶ 136.  Moreover, Plaintiffs allege that the California Complaint contains "defamatory statements" regarding Plaintiffs. *See id.* ¶ 195.  Beyond their publication in the California Complaint itself, Plaintiffs allege that these defamatory statements were published to third parties. *See id.* ¶ 196.

E.      **Alleged Defamatory Statements**

Plaintiffs allege that GWhitt made the following defamatory statements:

(a) Edison Nation and/or CFerguson and/or McFillin engaged in a wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud

---

[6]      This lawsuit is referred to as the "California Lawsuit" and the complaint therein is referred to as the "California Complaint."

b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified . . . .

*See id.* ¶ 197.

Additionally, Plaintiffs allege that these defamatory statements were made to the following individuals:

(a) Tai, Cloud b's counsel in or around 2018 through the present; (b) Ajay Gupta, Cloud b's counsel, in or around August 2019 through December 2019; (c) Kathy Tyler, Cloud b's counsel, in or around 2017 through 2019; (d) the US Trustee in the Cloud b Bankruptcy ("UST"), in or around November 2020; (e) Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (f) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for Cloud b Trustee from November 2020 through in or around December 2020; (g) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee"); (h) to various unsecured creditors of Cloud b from November 2020 through in or around December 2020; and (i) to investors of Edison Nation and the Securities and Exchange Commission.

*See id.* ¶ 198.

### F.   Plaintiffs' Claims

Based on these allegations, Plaintiffs allege the following claims:

Count I:  Intentional Misrepresentation  (Edison v. MKW, MMilam, Knecht, Ours, and JDoes);

Count II:  Negligent Misrepresentation (Edison v. MKW, MMilam, Knecht, Ours, and JDoes);

Count III:  Negligence (Edison v. MKW, MMilam, Knecht, Ours, and JDoes);

Count IV:  Conspiracy to Abuse Process, Unfair Business Practices, Civil Extortion, Trade Libel, and Defamation (Plaintiffs v. GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, and Knecht);

Count V:  Unfair Business Practices (Plaintiffs v. GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, and Knecht and JDoes);

Count VI:  Abuse of Process (Plaintiffs v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, and Knecht);

Count VII:  Civil Extortion  (McFillin v. GWhitt);

Count VIII:  Trade Libel (Edison v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht, and JDoes);

Count IX:  Defamation (CFerguson v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht, and JDoes); and

Count X: Defamation (McFillin v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht, and JDoes);

On April 12, 2021, the MKW Defendants moved to stay the proceedings, or in the alternative, dismiss the Amended Complaint for improper venue and failure to state a claim.[7] *See* Mot., ECF No. 31.  Following a series of responses and replies, the motion is ready for review.  *See* Resp.; Reply, ECF No. 40.

## III.    LEGAL STANDARDS AND APPLICABLE LAW

### A.    *Colorado River* Abstention – Review of Applicable Law

"The *Colorado River* doctrine . . . permits courts to abstain from exercising jurisdiction by staying or dismissing a pending federal action in favor of a parallel state court proceeding." *Kendall v. Lancaster Expl. & Dev. Co., LLC*, 323 F. Supp. 3d 664, 678 (W.D. Pa. 2018) (citing

---

[7]    Defendant Tai's motion to dismiss for lack of personal jurisdiction, filed separately, was granted by this Court.  *See* ECF Nos. 42, 43.  In addition, this Court granted in part and denied in part the motion to dismiss of Defendants Gerald Whitt, Alexander Whitt, Christopher Whitt, Matthew Whitt, and Deborah Milam, which was also filed separately.  *See* ECF Nos. 44, 45.

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009)). "[F]ederal courts must . . . apply this doctrine cautiously and be mindful that abstention is an 'extraordinary and narrow exception.'" *Id.* (quoting *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011)).

"The abstention analysis comprises a two-part inquiry: the court must decide first whether the actions are indeed 'parallel' and, second, whether the matters present the 'extraordinary circumstances' contemplated by *Colorado River* and its progeny." *Id.* (citing *Nationwide*, 571 F.3d at 307). "Generally, proceedings are 'parallel' when they 'involve the same parties and substantially identical claims, raising nearly identical allegations and issues.'" *Id.* (quoting *Yang v. Tsui*, 416 F.3d 199, 205 n.5 (3d Cir. 2005)). The Third Circuit has held that "only truly duplicative proceedings [should] be avoided." *See id.* (quoting *Complaint of Bankers Tr. Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980)). Accordingly, "[w]hen the claims, parties or requested relief differ, deference may not be appropriate." *Id.* (quoting *Chatterjee*, 636 F.2d at 40). If the two actions are not "parallel," "then the district court lacks the power to abstain," and the inquiry ends. *See Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997).

### B.      Motion to Dismiss for Improper Venue – Review of Applicable Law

Title 28 U.S.C. § 1391(b) provides that

> A civil action may be brought in--
>      (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>      (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>      (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In adjudicating a motion to dismiss for improper venue, courts must "accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (citing *Pierce v. Short Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)).  In evaluating the propriety of venue under § 1391(b)(2), a court must look not to "the defendant's 'contacts' with a particular district, but rather the location of those 'events or omission giving rise to the claim . . . .'" *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).   Moreover, § 1391(b)(2) "favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.'" *See id.*  "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *See id.*  The statute "no longer requires a court to select the 'best' forum . . . ." *See id.* (citing *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)).

Despite the general rule that venue must be established for each cause of action, a court may exercise "pendent venue" over a claim even if venue over that claim would not otherwise be proper. *See High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005) (citing *Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the U.S. and Can.*, 812 F. Supp. 509, 517 n.3 (E.D. Pa. 1992)). "[A] court examining whether to apply pendent venue should consider whether the claims derive from a common nucleus of operative fact and whether allowing for pendent venue would further the goals of judicial economy, convenience, and fairness to the litigants." *See id.* (citing *Beattie v. United States*, 756 F.2d 91, 101 (D.C. Cir. 1984)).

"Section 1406(a) comes into play where plaintiffs file suit in an improper forum." *See Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d

873, 878 (3d Cir. 1995)).  "In those instances, district courts are required either to dismiss or transfer to a proper forum."  *See id.* (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962)).

C.  **Motion to Dismiss for Failure to State a Claim – Review of Applicable Law**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### D.      Agency Relationship – Review of Applicable Law

"Under Pennsylvania law, to establish the existence of an agency relationship, a party

must show that: (1) there was a manifestation by the principal that the agent would act for it; (2)

the agent accepted such an undertaking; and (3) the principal retained control of the endeavor."

*Rychel v. Yates*, No. CIV.A. 09-1514, 2011 WL 1363751, at *10 (W.D. Pa. Apr. 11, 2011)

(citing *Castle Cheese, Inc. v. MS Produce, Inc.*, Civ. A. No. 04-878, 2008 WL 43728567, at *8

(W.D. Pa. Sept. 19, 2008)).  "The burden of establishing the existence of an agency relationship

rests on the party making the assertion."  *See id.* (citing *Goodway Mktg., Inc. v. Faulkner Advert.*

*Assocs., Inc.*, 545 F. Supp. 263, 267 (E.D. Pa. 1982)).

## IV.    ANALYSIS

The MKW Defendants move first to stay this case based on the *Colorado River* doctrine.

In the alternative, the MKW Defendants move to dismiss the Amended Complaint for improper

venue and failure to state a claim.  Following a review of the claims in the Amended Complaint,

this Court lacks the power to abstain from exercising jurisdiction under *Colorado River* because

this action is not parallel to the California Lawsuit.

Notwithstanding, this Court concludes that venue is inappropriate over Counts I, II, and

III, as Plaintiffs do not allege any substantial events giving rise to these claims that occurred in

this district.  Plaintiffs ask this Court to exercise pendent venue over Counts I, II, and III because

they assert that Counts IV, V, VI, VIII, IX, and X are appropriately in this district.  However, as

explained below, this Court cannot conduct an appropriate pendent venue analysis because

Plaintiffs fail to state a claim on any of Counts IV, V, VI, VIII, IX, or X.  Accordingly, Counts

IV, V, VI, VIII, IX, and X are dismissed without prejudice, and this Court holds any decision on

the question of pendent venue over Counts I, II, and III in abeyance until the time for Plaintiffs to amend their Amended Complaint has expired.

### A. *Colorado River* Abstention

The MKW Defendants begin by arguing that this matter is parallel with the ongoing California Lawsuit in state court, and therefore, this Court should exercise abstention under the *Colorado River* doctrine. As explained above, *Colorado River* permits a federal court to abstain from exercising jurisdiction over a matter where there is a pending and parallel state proceeding. *See Kendall*, 323 F. Supp. 3d at 678 (citing *Nationwide*, 571 F.3d at 307). Defendants argue that the California Lawsuit is parallel to this matter and otherwise satisfies the "extraordinary circumstances" necessary for *Colorado River* abstention.

This Court must first inquire into whether the matters are in fact parallel. Here, as Plaintiffs' arguments illustrate, the two matters are not sufficiently parallel, and this Court therefore lacks power to abstain. While some of the parties and claims of the two actions overlap, there are several significant differences between the two. *See Kendall*, 323 F. Supp. 3d at 678 (noting where claims, parties, or requested relief differ, abstention may be inappropriate (quoting *Chatterjee*, 636 F.2d at 40)). Foremost, Plaintiffs point out that the California Lawsuit includes Plaintiffs beyond those named in this matter, including (1) CBAV1, (2) SRM, (3) Linda Suh, (4) Jeff Johnson, and (5) Richard Brenner. *See* Resp. 26. Moreover, the California Lawsuit contains claims that are different from those alleged here, including (1) fraudulent concealment, (2) breach of fiduciary duty, (3) breach of contract, and (4) breach of confidence. *See* Resp. 27. Finally, whereas the California Lawsuit is based on events that predate its filing, some of the allegations in the Amended Complaint of this action are based on conduct that occurred *after* the filing of the California Lawsuit. By way of example, Plaintiffs' claims of defamation are based,

at least in part, on statements published after the California Lawsuit had already been filed. *See,
e.g.*, Am. Compl. Ex. 8 ("GWhitt Email"), ECF No. 28-8.

As the Third Circuit cautions, only "truly duplicative" actions should be avoided under
the Colorado River doctrine. *See Kendall*, 323 F. Supp. 3d at 678 (quoting *Chatterjee*, 636 F.2d
at 40). Here, a comparison of the California Lawsuit to the present suit shows that they are not
truly duplicative actions, and instead, there are several significant distinctions between the two.
These two matters are not parallel as the term is used in *Colorado River*, and therefore, this
Court lacks the power to abstain from exercising jurisdiction over the instant matter.

### B.     MKW Defendants' Venue Challenge

Next, the MKW Defendants argue that venue is improper in this district for Counts I, II
and III. In response, Plaintiffs assert that because venue is proper in this district over Counts IV,
V, VI, VIII, IX, and X, that this Court should exercise pendent venue over Counts I, II, and III.

This Court first concludes that venue in this district is improper for Counts I, II, and III
because Plaintiffs do not allege substantial events or omissions occurring in this district that
would give rise to those claims. Moreover, this Court conclude that Plaintiffs have failed to
state a claim on any of Counts IV, V, VIII, IX, and X as against MMilam and Knecht.
Accordingly, those claims are dismissed without prejudice. This Court holds any decision
regarding pendent venue in abeyance until the time for Plaintiffs to amend has passed.

### 1.     Venue is improper for Counts I, II, and III under 28 U.S.C. § 1391(b).

The MKW Defendants assert that the Eastern District of Pennsylvania is an improper
venue for Counts I, II, and III. Specifically, the MKW Defendants assert that Counts I through
III are based on the preparation and maintenance of financial records, all of which took place in
California. In response, Plaintiffs do not directly dispute the locale of the preparation and

maintenance of the financial records.  Rather, Plaintiffs point to Counts IV, V, VI, VIII, IX, and X, asserting that substantial events or omissions underlying these claims took place in this district, and therefore, venue here is proper.

Venue is appropriate in a district in which a substantial portion of the events giving rise to a claim took place.  *See* 28 U.S.C. § 1391(b).  Since no substantial events took place in this District with respect to Counts I, II, and III, this Court finds that venue is inappropriate in this district as to those Counts.  Based on the allegations in the Amended Complaint, Counts I through III are based on the MKW Defendants' preparation of financial records for Cloud b during a period from 2010 through 2018.  *See* Am. Compl. ¶¶ 204-05, 216, 224.  In their motion to dismiss, the MKW Defendants indicate that all of the MKW Defendants are domiciled in California.  *See* Mot. 22-23.  Moreover, the Amended Complaint indicates that Cloud b, for whom these financial records were prepared, is also domiciled in California.  *See* Am. Compl. ¶ 18.  Accordingly, the financial records prepared between 2010 and 2018 were compiled for a California corporation by a California accounting agency and California accountants.  Plaintiffs do not dispute the MKW Defendants' contentions as to domicile.  *See* Resp. 45.  Additionally, Plaintiffs do not point to any substantial events in the Eastern District of Pennsylvania with respect to Counts I through III that would operate to render venue appropriate in this district. Accordingly, Plaintiffs have failed to show that venue is appropriate in this district as to Counts I, II, and III based solely on the test set forth in § 1391(b).

> **2.     At this time, this Court cannot analyze whether pendent venue is appropriate because Plaintiffs fail to state a claim on Counts IV, V, VI, VIII, IX, and X.**

In an effort to establish the propriety of venue over Counts I, II, and III, Plaintiffs point to Counts IV, V, VI, VIII, IX, and X of the Amended Complaint, asserting that substantial conduct

giving rise to these claims took place in the Eastern District of Pennsylvania.  *See* Resp. 45.

Plaintiffs essentially ask this Court to exercise pendent venue over Counts I, II, and III based on

the allegations in Counts IV, V, VI, VIII, IX, and X of the Amended Complaint.

Where a complaint contains at least some claims for which venue is proper, the doctrine

of pendent venue allows a court to hear other claims for which venue is improper, so long as (1)

those claims are derived from a common nucleus of facts and (2) the factors of judicial economy,

convenience, and fairness balance in favor of hearing all of the claims.  *See High River Ltd.*

*P'ship*, 353 F. Supp. at 487 (citing *Beattie*, 756 F.2d at 101).

Here, this Court cannot begin to conduct an analysis of pendent venue because Plaintiffs

fail to state a claim against MMilam or Knecht in any of the Counts upon which they wish to

base pendent venue.  A claim has facial plausibility "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678.  Here, Plaintiffs fail to plead any facts to support

that MMilam or Knecht had any personal involvement in the alleged misconduct in Counts IV,

V, VI, VIII, IX, or X.  Rather, for each of these Counts, Plaintiffs rely on identical boilerplate

language to suggest that MMilam and Knecht were indirectly involved in these alleged tortious

actions.  To wit, Plaintiffs repeatedly plead that

> GWhitt, *individually and as the authorized agent and/or representative of the other Defendants*, from his office in California and/or from various locations in California to the Eastern District of Pennsylvania, via telephone, mail and/or email, knowingly made false, disparaging and defamatory statements regarding Edison Nation's, CFerguson's and McFillin's business, conduct and dealings in connection with, among other things, Cloud b . . . .

*See* Am. Compl. ¶¶ 238, 285, 296, 307 (emphasis added).

Plaintiffs make no effort to allege that MMilam or Knecht took any individualized action

with respect to this alleged misconduct.  Rather, Plaintiffs rely solely on GWhitt's conduct,

asserting that GWhitt's actions impugn MMilam and Knecht by way of an agency relationship. Notwithstanding, Plaintiffs fail to allege facts sufficient to make out that such an agency relationship exists. Plaintiffs' bald allegation that GWhitt acted "as the authorized agent for" MMilam and Knecht is wholly insufficient to establish an agency relationship. Fatally, Plaintiffs make no effort to allege facts that would support that MMilam and Knecht manifested an intent to have GWhitt act on their behalf. Accordingly, having failed to allege that MMilam or Knecht took any action with respect to these Counts and having failed to sufficiently allege any agency relationship between MMilam, Knecht and GWhitt, Plaintiffs fail to state a claim against MMilam and Knecht as to Counts IV, V, VI, VIII, IX, and X. Therefore, those Counts are dismissed without prejudice.[8]

Since these Counts are dismissed without prejudice, the Court cannot perform a full and appropriate analysis of whether these dismissed Counts should form the basis for the exercise of pendent venue over Counts I, II, and III. To be sure, an exercise of pendent venue on the basis of those dismissed Counts would appear to be inappropriate at this time. However, because the Court's dismissal of those Counts is one without prejudice, this Court cannot say, at present, that such an occasion for pendent venue could not arise in a subsequent Amended Complaint. Accordingly, this Court holds its decision regarding pendent venue over Counts I, II and III in abeyance until the time for filing an amended complaint has passed.[9]

---

[8]     That Plaintiffs' claims in Counts V, VIII, and X survived as against GWhitt is inapposite to this Court's decision today. *See* ECF No. 44. In the claims that survived, Plaintiffs sufficiently pleaded action taken by GWhitt so as to render him plausibly liable for the alleged misconduct. *See id.* To the contrary, Plaintiffs make no effort to plead that MMilam or Knecht took any action with respect to any of those allegations, relying instead on the theory that GWhitt acted as their agent. Accordingly, this Court's Opinion today is consistent with its Opinion dated September 27, 2021. *See id.*

[9]     This is not to say that this Court will exercise pendent venue so long as Plaintiffs file an amended complaint. To be sure, if Plaintiffs decline to file an amended complaint or fail to state

V.      **CONCLUSION**

Following a review of the Amended Complaint, this Court lacks the power to abstain from exercising jurisdiction under the *Colorado River* doctrine because this action is not parallel to the ongoing California Lawsuit.  Moreover, absent the doctrine of pendent venue, venue is improper in this district for Counts I, II, and III.  Plaintiffs' assertion that this Court should exercise pendent venue on the basis of Counts IV, V, VI, VIII, IX and X in the Amended Complaint is unavailing at this time because Plaintiffs fail to state a claim against either MMilam or Knecht on any of those Counts.  Accordingly, Counts IV, V, VI, VIII, IX and X are dismissed without prejudice.[10]  Plaintiffs are granted leave to amend their Amended Complaint to the extent that they can resolve the factual deficiencies in those six Counts.  Moreover, because Plaintiffs are afforded an opportunity to amend the claims on which pendent venue would be based, this Court holds any decision on whether to exercise pendent venue in abeyance pending the expiry of Plaintiffs' deadline to amend.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

a claim in any amended complaint, this Court will enter an Order transferring Counts I, II, and III to an appropriate venue.  However, if Plaintiffs file an amended complaint and sufficiently state a claim as to Counts IV, V, VI, VIII IX, or X, then this Court will undertake the appropriate pendent venue analysis at that time.

[10]      The dismissal of Counts IV, V, VI, VIII, IX and X is one without prejudice as this Court cannot say at this time whether amendment would be inequitable or futile.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").